**BRYAN MEMORIAL HOSPITAL, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 86–1549.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 9, 1987.

Decided March 19, 1987.

Rehearing Denied April 14, 1987.

William A. Harding, Lincoln, Neb., for petitioner.

Patrick Szymanski, Washington, D.C., for respondent.

Before McMILLIAN and FAGG, Circuit Judges, and WOODS,* District Judge.

McMILLIAN, Circuit Judge.

Bryan Memorial Hospital (the Hospital) appeals from an order of the National Labor Relations Board (the Board). The Board cross-petitions for enforcement of the order. The Board held that the Hospital had violated § 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5), by withdrawing recognition from the Nebraska Nurses Association (the Union) and by unilaterally changing its maternity leave policy and employee insurance benefits. For the reasons stated below, we deny the petition for review and enforce the order of the Board.

The Hospital is located in Lincoln, Nebraska. On March 8, 1982, the Union was certified as the collective bargaining representative for a bargaining unit of approximately 400 nurse/employees. Throughout all relevant time periods, the Hospital has had a written leave of absence policy that covers employee absences due to pregnancy.[1] In practice, however, the Hospital has enforced a more liberal policy for maternity leave. Under the unwritten policy, employees have automatically been allowed up to 90 days maternity leave at the employee's discretion and time without regard for the Hospital's staffing requirements. Further, the Hospital has not required employees on

---

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The written policy states that leaves of absence are granted at the discretion of management and that return to work following a leave depends on the availability of jobs. An extended illness leave for employees who have exhausted their sick leave benefits may not exceed three months; this extended illness leave provision covers pregnancy. An employee on extended illness leave must present a physician's statement at the time he or she requests leave and when he or she returns to work.

maternity leave to produce physicians' statements and has permitted them to return to their former jobs without question after the leave. Employees on maternity leave have also been given other benefits. Under the unwritten maternity leave policy, full-time pregnant employees have been allowed to transfer to part-time status late in pregnancy and then, close to the time of delivery, have been returned to full-time status. Because only full-time employees can use accrued sick leave during a leave of absence, this arrangement allowed the employee to use her accrued sick time on maternity leave. Further, employees on maternity leave have been allowed to stretch out the rate at which they use up sick leave during the leave.[2]

There was evidence that during the period from mid-1982 to February 1983, the Hospital changed the terms under which employees could take maternity leave. It was stipulated that the Hospital did not consult with the Union about these changes. Although the changes were applied in an erratic and unclear manner, employees taking maternity leave during this time testified that they did so under more restrictive provisions.

In February 1983, the Union filed an unfair labor practice charge over the unilateral changes in the maternity leave policy. The Hospital then reinstated its practice of permitting more liberal maternity leave and the complaint was settled by agreement of the parties on May 9, 1983.

While the settlement agreement was awaiting approval by the Regional Director, a decertification petition was filed by a group of Hospital employees. The day after the petition was filed, the Hospital contacted the attorney for the employees' group and requested verification that the Union no longer enjoyed the support of a majority of employees within the bargaining unit. The attorney replied, stating that the decertification petition was supported by substantially more than 30 percent of the bargaining unit employees.[3] The attorney said that he had contacted virtually all the employees in the bargaining unit and that a majority of those employees did not want the Union. Several days later, the Hospital again contacted the attorney, seeking further support for his claims. The attorney responded by sending the Hospital affidavits from 11 members of the bargaining unit. The language of the 11 affidavits was identical. Each affiant stated that she had spoken to a certain number of other unit employees who told the affiant that they either did not want the Union to represent them or that they wanted a new election. On their face, the 11 affidavits claim to represent the views of 225 of the approximately 400 employees in the bargaining unit. The names of the 225 employees, however, were not disclosed. Each affidavit stated: "[A]ffiant can identify those individuals, but chooses not to do so, because they have expressed a desire for anonymity and confidentiality, and therefore affiant will not disclose their names at this time." The attorney for the employees' group told the Hospital that the affidavits documented his claim that a majority of the bargaining unit employees had withdrawn support from the Union.

Upon receiving this letter and the attached affidavits, the Hospital immediately withdrew recognition from the Union and ceased bargaining. Several days later, the Hospital made unilateral changes in health insurance benefits available to employees in the bargaining unit. The Regional Director then withdrew approval of the agreement settling the earlier complaint and issued a second complaint alleging that the Hospital had unlawfully refused to bargain with the Union and had made further unilateral changes in the terms and conditions of employment. The cases and charges were consolidated.

---

**2.** The advantage to the employee of stretching out the rate at which accrued sick leave is used is that until the accrued time is exhausted, the Hospital continues to pay health insurance premiums for the employee.

**3.** The National Labor Relations Board will order a decertification election only where 30 percent or more of the bargaining unit employees no longer support the certified union. 29 C.F.R. § 101.18(a).

 The Hospital contends on appeal that it was justified in withdrawing recognition from the Union. A certified union enjoys a presumption that its majority representative status continues. *Terrell Machine Co.*, 173 N.L.R.B. 1480 (1969), *enf'd*, 427 F.2d 1088 (4th Cir.), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1821, 26 L.Ed.2d 91 (1970). That presumption is irrebuttable for the first year following certification. After the first year, the presumption of majority status continues but may be rebutted. *Id.* at 1480–81. An employer who has refused to bargain with a certified union may rebut the presumption by showing that its refusal to bargain was predicated on a reasonable good faith doubt about the union's continued majority status. *Id.* The asserted doubt must be based on objective considerations. *Id.* The existence of reasonable good faith doubt is determined on the totality of circumstances in the particular case. *Sofco, Inc.*, 268 N.L.R.B. 159, 159–60 (1983).

 In the present case, the Hospital asserts that it had such a reasonable good faith doubt in the Union's continued majority support based on the documented claims of the dissident employees' group, including the 11 affidavits, and the filing of the decertification petition. We consider first the claim that the documentation provided by the dissident employees' group was objective evidence justifying a reasonable good faith doubt. The Board concluded in its decision that the assurances of the attorney for the dissident employees' group and the 11 affidavits did not support a reasonable good faith doubt. We agree. The affidavits reliably express only the views of the named affiants and otherwise convey only unverified claims about the views of anonymous individuals. Even on their face, the affidavits do not assert that a majority of the employees whose views are said to be represented have withdrawn

support from the Union. The affidavits merely state that the anonymous employees either do not want the Union *or* want a new election. There are no other features of the affidavits that support the credibility of their claims. Unverified claims by employees that they speak for others is not a sufficient basis for an employer's reasonable good faith doubt about union support where there are no other reliable indicia of employee attitudes.

 Nor do we agree with the Hospital that the filing of the decertification petition justified withdrawing recognition from the Union. The Board has adopted the rule that the filing of a decertification petition does not by itself provide sufficient basis for doubt about a union's continued majority status. *Dresser Industries, Inc.*, 264 N.L.R.B. 1088 (1982) *(Dresser)*. In *Dresser*, the Board concluded that an incumbent union's presumption of continued majority status is weakened if an employer is permitted to withdraw recognition from a union solely on the basis of a filing of a decertification petition. *Id.* at 1089. A decertification petition, wrote the Board, "in no way reflects, or purports to reflect, the sentiment of the unit majority." *Id.* at 1088. We find this rationale persuasive and we therefore defer to the Board policy on this issue.[4] We hold that the Hospital did not have a reasonable good faith doubt that the Union had lost majority support in the bargaining unit that could justify its withdrawal of recognition from the Union. The Hospital's action thus constituted an unfair labor practice.

 We next consider the issue of the Hospital's unilateral change in health insurance benefits for employees in the bargaining unit. There is no dispute that the Hospital changed health insurance benefits within days of withdrawing recognition from the Union and, necessarily, without consulting the Union. Because we have

---

4. *Dresser Industries, Inc.*, 264 N.L.R.B. 1088 (1982) *(Dresser)*, expressly overrules the Board's prior rule, set out in *Telautograph Corp.*, 199 N.L.R.B. 892 (1972) *(Telautograph)*, that the filing of a decertification petition justifies an employer's refusal to bargain with an incumbent union. 264 N.L.R.B. at 1089. We deferred to the *Telautograph* rule in *National Cash Reg-*

*ister Co. v. NLRB*, 494 F.2d 189, 194 (8th Cir. 1974) *(National Cash Register)*, and *Royal Typewriter Co. v. NLRB*, 533 F.2d 1030, 1037 (8th Cir.1976) *(Royal Typewriter)*. In view of the change in Board policy expressed by *Dresser*, *National Cash Register* and *Royal Typewriter* can no longer be considered controlling in this circuit.

determined that withdrawing recognition from the Union was improper, we conclude that the Hospital had a continuing obligation to bargain. Thus, the Hospital's unilateral change in health insurance benefits constituted an unfair labor practice.

The Hospital also apparently concedes that even before the dispute over recognition of the Union, it had made unilateral changes in its maternity leave policy. The Hospital raises as a defense the argument that the changes were *de minimis* and not of sufficient gravity, therefore, to justify a remedial order. The Board in its decision concluded to the contrary, holding that the changes in the maternity leave policy were substantial and not *de minimis.* This factual finding will be upheld if supported by substantial evidence in the record. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951). We have carefully reviewed the record and briefs and we find substantial support for the Board's conclusion that the changes in the Hospital maternity leave provisions were not *de minimis.* We therefore conclude that the Hospital committed an unfair labor practice in unilaterally changing its maternity leave policy.

Accordingly, the petition for review is denied and the Board's order is enforced.