Marvin POWELL, Brian Holloway, Michael Kenn, Michael Davis, James Lofton, Michael Luckhurst, Dan Marino, George Martin, Steve Jordan and the National Football League Players Association on behalf of themselves and all class members, Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE;

The Five Smiths, Inc., d/b/a Atlanta Falcons;

Buffalo Bills, Inc., d/b/a Buffalo Bills;

Chicago Bears Football Club, Inc., d/b/a Chicago Bears;

Cincinnati Bengals, Inc., d/b/a Cincinnati Bengals;

Cleveland Browns, Inc., d/b/a Cleveland Browns;

The Dallas Cowboys Football Club, Ltd., d/b/a Dallas Cowboys;

PDB Sports, Ltd., d/b/a Denver Broncos;

The Detroit Lions, Inc., d/b/a Detroit Lions;

The Green Bay Packers, Inc., d/b/a Green Bay Packers;

Houston Oilers, Inc., d/b/a Houston Oilers;

Indianapolis Colts, Inc., d/b/a Indianapolis Colts;

Kansas City Chiefs Football Club, Inc., d/b/a Kansas City Chiefs;

The Los Angeles Raiders, Ltd., d/b/a Los Angeles Raiders;

Los Angeles Rams Football Company, Inc., d/b/a Los Angeles Rams;

Miami Dolphins, Ltd., d/b/a Miami Dolphins;

Minnesota Vikings Football Club, Inc., d/b/a Minnesota Vikings;

New England Patriots Football Club, Inc., d/b/a New England Patriots;

The New Orleans Saints Limited Partnership, d/b/a New Orleans Saints;

New York Football Giants, Inc., d/b/a New York Giants;

New York Jets Football Club, Inc., d/b/a New York Jets;

The Philadelphia Eagles Football Club, Inc., d/b/a Philadelphia Eagles;

B & B Holdings, Inc., d/b/a Phoenix Cardinals;

Pittsburgh Steelers Sports, Inc., d/b/a Pittsburgh Steelers;

The St. Louis Football Cardinals, Inc., d/b/a St. Louis Cardinals;

The Chargers Football Company, d/b/a San Diego Chargers;

The San Francisco Forty-Niners, Ltd., d/b/a San Francisco 49ers;

The Seattle Professional Football Club, Ltd., d/b/a Seattle Seahawks;

Tampa Bay Area NFL Football Club, Inc., d/b/a Tampa Bay Buccaneers;

Pro-Football, Inc., d/b/a Washington Redskins; Defendants.

Freeman McNEIL, Mark Collins, Lee Rouson, Niko Noga, Don Majkowski, Dave Richards, Irvin Eatman and Tim McDonald, Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE,

The Five Smiths, Inc., d/b/a Atlanta Falcons;

Buffalo Bills, Inc., d/b/a Buffalo Bills;

Chicago Bears Football Club, Inc., d/b/a Chicago Bears;

Cincinnati Bengals, Inc., d/b/a Cincinnati Bengals;

Cleveland Browns, Inc., d/b/a Cleveland Browns;

The Dallas Cowboys Football Club, Ltd., d/b/a Dallas Cowboys;

PDB Sports, Ltd., d/b/a Denver Broncos;

1352

The Detroit Lions, Inc., d/b/a
Detroit Lions;

The Green Bay Packers, Inc., d/b/a
Green Bay Packers;

Houston Oilers, Inc., d/b/a
Houston Oilers;

Indianapolis Colts, Inc., d/b/a
Indianapolis Colts;

Kansas City Chiefs Football Club, Inc.,
d/b/a Kansas City Chiefs;

The Los Angeles Raiders, Ltd., d/b/a
Los Angeles Raiders;

Los Angeles Rams Football Company,
Inc., d/b/a Los Angeles Rams;

Miami Dolphins, Ltd., d/b/a
Miami Dolphins;

Minnesota Vikings Football Club, Inc.,
d/b/a Minnesota Vikings;

KMS Patriots Limited Partnership,
d/b/a New England Patriots;

The New Orleans Saints Limited Part-
nership, d/b/a New Orleans Saints;

New York Football Giants, Inc., d/b/a
New York Giants;

New York Jets Football Club, Inc.,
d/b/a New York Jets;

The Philadelphia Eagles Football Club,
Inc., d/b/a Philadelphia Eagles;

B & B Holdings, Inc., d/b/a
Phoenix Cardinals;

Pittsburgh Steelers Sports, Inc., d/b/a
Pittsburgh Steelers;

The St. Louis Football Cardinals, Inc.,
d/b/a St. Louis Cardinals;

The Chargers Football Company, d/b/a
San Diego Chargers;

The San Francisco Forty–Niners, Ltd.,
d/b/a San Francisco 49ers;

The Seattle Professional Football Club,
Ltd., d/b/a Seattle Seahawks;

Tampa Bay Area NFL Football Club,
Inc., d/b/a Tampa Bay Buccaneers;

Pro–Football, Inc., d/b/a Washington
Redskins; Defendants.

Civ. Nos. 4–87–917, 4–90–476.

United States District Court,
D. Minnesota,
Fourth Division.

May 23, 1991.

Edward M. Glennon, Carol T. Rieger, Luke H. Terhaar, Charles J. Lloyd, Mark Robert Johnson and Lindquist & Vennum, Minneapolis, Minn., Jeffrey L. Kessler, Craig M.J. Allely, Daniel Rubin, Bruce S. Meyer, James W. Quinn and Weil, Gotshal & Manges, New York City, for plaintiffs.

James Fitzmaurice, Patrick J. Schiltz and Faegre & Benson, Minneapolis, Minn., John H. Schafer, Herbert Dym, Jeffrey Pash, Neil Roman, Richard W. Buchanan and Covington & Burling, Washington, D.C., for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on the following motions:

1. Defendants' motion to consolidate *Powell v. National Football League* and *McNeil v. National Football League* pursuant to Federal Rule of Civil Procedure 42(a);

2. Defendants' motion in *McNeil* for a protective order;

3. Defendants' appeal in *McNeil* of an order of Magistrate Judge Boline dated October 3, 1990; and

4. Plaintiffs' motion in *McNeil* for partial summary judgment.

Based on a review of the file, record and proceedings herein, the court:

1. Denies defendants' motion to consolidate the *Powell* and *McNeil* cases;

2. Denies defendants' motion in *McNeil* for a protective order;

3. Affirms Magistrate Judge Boline's order in *McNeil* dated October 3, 1990; and

4. Grants plaintiffs' motion in *McNeil* for partial summary judgment.

## BACKGROUND

The *McNeil* plaintiffs are eight individual football players whose contracts with their NFL employers expired on February 1, 1990. Plaintiffs allege that the NFL defen-

dants violated Section 1 of the Sherman Act as a result of illegal restraints under Plan B during the 1990–91 NFL season. Plaintiffs contend that they have standing to bring antitrust claims in light of the Eighth Circuit's decision in *Powell v. National Football League*, 888 F.2d 559 (8th Cir.1989). They argue that the *Powell* decision left players with the choice of either accepting indefinitely the NFL defendants' allegedly illegal restraints of trade or abandoning entirely union representation in order to pursue their antitrust rights. *Id.* at 570 (Heaney, J., dissenting). Plaintiffs claim that the NFL players have chosen to end their union representation in order to clear the way for antitrust claims by individual players.

The facts regarding the actions of the players and the players' union are largely undisputed. On November 3, 1989, the Executive Committee ("Committee") of the National Football Players Association ("NFLPA") met to discuss various strategies in the wake of the Eighth Circuit's decision in *Powell.* The Committee decided to abandon all collective bargaining rights in an effort to end the labor exemption defense to the NFL defendants' system of player restraints. On November 6, 1989, the Committee notified the NFL Management Council of its decision to abandon collective bargaining rights. Over the following weeks, players of the NFL teams met to discuss the *Powell* decision. The substantial majority of players agreed with the NFLPA's decision to end union representation in order to allow players' antitrust lawsuits to go forward.[1] On December 5, 1989, player representatives from the twenty-four NFL teams met and unanimously voted to end the NFLPA's status as the players' collective bargaining representative and to restructure the organization as a voluntary professional association. They enacted new by-laws which supersede the existing constitution and prohibit the NFLPA or its members from engaging in collective bargaining with the NFL, its member clubs or agents.

As a result, the NFLPA contends that it is no longer a labor union but a voluntary professional association which acts to further the interests of active and former NFL players using methods other than collective bargaining. As such, the NFLPA has filed a labor organization termination notice with the United States Department of Labor. The Internal Revenue Service has also reclassified the NFLPA's tax-exempt status from that of a labor organization to that of a business league. Since November 6, 1989, the NFLPA has engaged in no collective bargaining on behalf of any of the NFL players. It also informed NFL management that it would no longer represent the players in grievance proceedings and that players must pursue any claims against the NFL or its members on an individual basis through their own legal counsel.

Based on the NFLPA's actions, plaintiffs argue that the nonstatutory labor exemption defense no longer bars their antitrust challenges and seek partial summary judgment on this issue. Plaintiffs maintain that the exemption expired no later than December of 1989 and thus the court may consider the merits of the *McNeil* plaintiffs' antitrust claims because they involve player restraints imposed by the NFL defendants after February 1, 1990. Plaintiffs further contend that they have paid a price for giving up their labor rights because the NFL defendants have capitalized on the players' nonunion status by unilaterally cutting insurance benefits and lengthening the playing season to seventeen weeks.

The NFL defendants contend, however, that partial summary judgment is inappropriate because genuine issues of material fact exist regarding the effectiveness of the NFLPA's attempt to disclaim its status as a labor union. The NFL defendants maintain that the NFLPA's disclaimer may be a sham because the NFLPA still functions as a labor union and the disclaimer is merely a tactical maneuver to pressure the NFL defendants into negotiations. The

---

1. Over 930 of the approximately 1,500 players who were in the NFL at that time signed petitions which stated that neither the NFLPA nor any other entity was authorized to act as their representative in collective bargaining.

NFL defendants further claim that material fact disputes exist regarding the NFLPA's motive, credibility and good faith and that the National Labor Relations Board ("NLRB") must decertify the NFLPA before it ceases to be a labor organization. Finally, the NFL defendants argue that even if the NFLPA's disclaimer were effective, the nonstatutory labor exemption as defined by the Eighth Circuit in *Powell* continues.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324,

106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court will consider plaintiffs' motion for partial summary judgment.

1. *Plaintiffs' Motion for Partial Summary Judgment*

■ In *Powell v. National Football League,* the Eighth Circuit held that the nonstatutory labor exemption continued to protect the NFL defendants' player restraints after the expiration of the collective bargaining agreement and even after a judicially recognized impasse had been reached in negotiations, as long as an "ongoing collective bargaining relationship" existed between the parties. 888 F.2d 559, 568 (8th Cir.1989).

In rejecting impasse as the appropriate endpoint for the labor exemption, the Eighth Circuit reasoned that after this point both management and unions still have an "array of remedies" available under the labor laws to resolve their differences, including strikes, renewed collective bargaining or claims before the NLRB for a failure to bargain in good faith. *Id.* at 566–67. The court therefore concluded that at impasse federal labor policy continues to override the concerns of antitrust laws.

The court rejected the NFL defendants' contention that the labor exemption extends indefinitely, stating:

> [i]mportantly, this [holding] does not entail that once a union and management enter into collective bargaining, management is forever exempt from the antitrust laws, and we do not hold that restraints on player services can never offend the Sherman Act.

*Id.* at 568.

The court, however, did not define the point at which the labor exemption would end, reasoning that:

[u]pon the facts currently presented by this case, we are not compelled to look into the future and pick a termination point for the labor exemption. The parties are now faced with several choices. They may bargain further.... [t]hey may resort to economic force. And finally, if appropriate issues arise, they may present claims to the National Labor Relations Board. We are satisfied that as long as there is a possibility that proceedings may be commenced before the Board, or until final resolution of Board proceedings and appeals therefrom, the labor relationship continues and the labor exemption applies.

*Id.* The Eighth Circuit further noted that the NFL defendants had conceded that the nonstatutory labor exemption would necessarily end "if the affected employees ceased to be represented by a certified union." *Id.* at 568 n. 12.

Although the *Powell* majority opinion did not define a termination point for the labor exemption, the dissenting member of the panel interpreted the majority decision to effectively leave the players with the choice of either forever accepting a system which players contend illegally restrains trade or entirely abandoning their union representation in order to pursue their individual antitrust claims. *See id.* at 570 (Heaney, J., dissenting) (stating that "the end result of the majority opinion is that once a union agrees to a package of player restraints, it will be bound to that package forever unless the union forfeits its bargaining rights"). Similarly, the dissent from the denial of a rehearing en banc noted that: "the union should not be compelled, short of self-destruction, to accept illegal restraints it deems undesirable." *Id.* at 574 (Lay, Chief J., dissenting from denial of rehearing en banc); *see also* Lock, *Powell v. National Football League: The*

*Eighth Circuit Sacks the National Football League Players Association,* 67 Den. U.L.Rev. 135, 151–53 (1990) (discussing the ramifications of the Eighth Circuit's decision in *Powell* ).

Faced with this apparent choice, the players decided to terminate their union representation. On November 3, 1989, the NFLPA's Executive Committee voted to renounce collective bargaining. On November 6, 1989, the Committee advised the NFL defendants that it would no longer engage in collective bargaining or represent players in grievances. Next, approximately sixty-two percent of the active players signed petitions revoking the authority of the NFLPA or any other entity to engage in collective bargaining on their behalf. On December 5, 1989, the NFLPA's player representatives unanimously adopted new bylaws that ended the organization's status as a collective bargaining representative. Under the new bylaws, no officer, employee or member of the NFLPA is authorized to discuss, deal or negotiate with the NFL or any of its member clubs or their agents. The NFLPA thus terminated its status as a labor organization.[2] Reflecting its change in character and purpose, the NFLPA filed a labor organization termination notice with the United States Department of Labor. The Internal Revenue Service also changed the organization's tax-exempt status from that of a "labor organization" under § 501(c)(5) of the Internal Revenue Code to that of a "business league" under § 501(c)(6).

The NFL defendants nonetheless claim that the acts taken by the NFLPA and the players to end union representation are insufficient to terminate the labor exemption, contending that the NFLPA must first obtain a determination from the NLRB "that its certification is no longer operative."[3] The NFL defendants' posi-

---

2. The National Labor Relations Act defines a labor organization as an organization "which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5); *see also Sahara Datsun, Inc. v. NLRB,* 811 F.2d 1317, 1320 (9th Cir.1987) (determining that an organization qualified as a labor orga-

nization because its purpose was to negotiate with an employer).

3. The *Powell* majority did not address the issue of whether the existence of a bargaining relationship depends on NLRB certification or decertification although the dissent noted that a bargaining relationship may be terminated "either by an NLRB decertification proceeding or

tion regarding decertification, however, finds no support in labor law. The National Labor Relations Act "guarantees the employees the right to bargain collectively with representatives of their own choosing." *NLRB v. Local 103, International Ass'n of Bridge, Structural & Ornamental Iron Workers*, 434 U.S. 335, 344, 98 S.Ct. 651, 657, 54 L.Ed.2d 586 (1978) (citing 29 U.S.C. § 157). The existence of a bargaining relationship does not depend on NLRB certification, but rather depends on whether a majority of the employees in a bargaining unit supports a particular union as their bargaining representative. *See, e.g., id.* (general labor policy is that "a union should not purport to act as the collective-bargaining agent for all unit employees, and may not be recognized as such, unless it is the voice of the majority of the employees in the unit").[4] This majority status may be achieved through an NLRB election and certification procedure, but a union may also demonstrate majority status "by showing convincing support, for instance, by a union-called strike or strike vote, or … by possession of cards signed by a majority of the employees authorizing the union to represent them for collective bargaining purposes." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 596–97, 89 S.Ct. 1918, 1930–31, 23 L.Ed.2d 547 (1969) (footnotes omitted). An employer's obligation to bargain thus is not restricted "solely to those unions whose representative status is certified after a Board election." *Id.* at 600, 89 S.Ct. at 1933.

■ The certification process exists not to establish a bargaining relationship but rather to provide unions with "the benefit of numerous special privileges which are not accorded unions recognized voluntarily or under a bargaining order." *See id.* at 598–99, 89 S.Ct. at 1932–33. For example, once certified, a union's majority status is irrebuttably presumed to continue for a reasonable period of time, usually one year. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 37, 107 S.Ct. 2225, 2232, 96 L.Ed.2d 22 (1987) (citing *Brooks v. NLRB*, 348 U.S. 96, 98–99, 75 S.Ct. 176, 178–179, 99 L.Ed. 125 (1954)).[5] Following this period of time, the labor laws permit an employer to unilaterally withdraw recognition of a certified union and thus end the collective bargaining relationship if the employer can show either: (1) that the union in fact no longer has the support of the majority of the bargaining unit employees; or (2) that the employer has a reasonable good faith doubt about the union's majority status. *See, e.g., United Supermarkets, Inc. v. NLRB*, 862 F.2d 549, 552 (5th Cir. 1989) (citations omitted). Because an employer may end a bargaining relationship by simply withdrawing recognition from a certified union based on its good faith belief that the union has lost majority status, it follows that employees have that same right.[6] Moreover, unlike employers, who

---

by abandonment of bargaining rights by the union." 888 F.2d at 570 (Heaney, J., dissenting).

4. Moreover, "the Court has held that both union and employer commit unfair practices when they sign a collective-bargaining agreement recognizing the union as the exclusive bargaining representative when in fact only a minority of the employees have authorized the union to represent their interests." *Iron Workers*, 434 U.S. at 344, 98 S.Ct. at 657; *see also* Lesnick, *Establishment of Bargaining Rights Without an NLRB Election*, 65 Mich.L.Rev. 851, 861–62 (1967) (noting that the Supreme Court "has repeatedly held that certification is not the only route to representative status").

5. Other ways in which certified unions are protected include:

protection against the filing of new election petitions by rival unions or employees seeking

decertification for 12 months … protection against recognitional picketing by rival unions … and freedom from the restrictions placed in work assignments disputes … and on recognitional and organizational picketing.…

*Gissel Packing Co.*, 395 U.S. at 599 n. 14, 89 S.Ct. at 1932 n. 14 (citations omitted).

6. In a different context, courts have held that a union may end its duty to bargain by disclaiming interest in representing the employees as long as it does so in good faith. *See, e.g., Corrugated Asbestos Contractors, Inc. v. NLRB*, 458 F.2d 683, 687 (5th Cir.1972) (finding disclaimer effective because of union's "continued and adamant insistence" and holding that a union cannot be forced "to continue, against its wishes, a relationship that is in its very nature predicated upon voluntariness and consent"). The good faith issue does not arise in the

must demonstrate by clear and convincing evidence a good faith doubt as to a union's majority, *see id.* (quoting *NLRB v. A.W. Thompson, Inc.,* 651 F.2d 1141, 1141 (5th Cir.1981)), employees have an unconditional right "to refrain" from self-organization and collective bargaining which is guaranteed by Section 7 of the National Labor Relations Act. 29 U.S.C. § 157.

 Just as certification is not required to create a collective bargaining relationship, a decertification proceeding is not required to end it. *See, e.g., NLRB v. Florida Citrus Canners Coop.,* 288 F.2d 630, 639 (5th Cir.1961), *rev'd on other grounds,* 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962) (where majority of employees repudiates a union, employer's duty to bargain ceases, and employer is "not required to indulge in a useless gesture of petitioning for decertification"); *NLRB v. Superior Fireproof Door & Sash Co.,* 289 F.2d 713, 719 (2d Cir.1961) (holding that "[d]ecertification is a time-consuming endeavor" which is not required to end the duty to bargain; employer may refuse to bargain if it "has reasonable grounds to believe [the union] has lost majority support"). A decertification election proceeding may be conducted when either an employer or a competing union seeks to contest a union's majority status and the union disagrees. *See Briggs Plumbingware, Inc. v. NLRB,* 877 F.2d 1282, 1289 (6th Cir.1989) (when relying on union's actual loss of majority status to rebut charges of unfair labor practice, employer must prove either "loss of an actual numerical majority or a Board election or decertification"); *Leedom v. International Bhd. of Elec. Workers, Local 108,* 278 F.2d 237, 244 (D.C.Cir.1960) (permitting independent union to intervene in decertification proceeding). In the present case, a majority of players have voted to end collective bargaining. The NFLPA also concedes that it has lost its majority status and may no longer bargain on the players' behalf. Thus, there is no need for the NLRB to decertify the NFLPA.[7]

The NFL defendants further argue that even if the NLRB decertified the NFLPA, this procedure would be insufficient to end the labor exemption. They do not, however, state what acts they believe would suffice to end the exemption, reflecting perhaps a belief that the labor exemption never ends. The *Powell* court, however, expressly rejected the idea that the NFL defendants enjoy endless antitrust immunity. 888 F.2d at 568. Moreover, such protection is contrary to the fundamental labor law principle that, just as employees have a right to bargain collectively through a labor organization, they also have a corresponding right not to do so. *See* 29 U.S.C. § 157; *see also NLRB v. National Car Rental Sys.,* 672 F.2d 1182, 1190 (3d Cir. 1982) (holding that a bargaining representative cannot be imposed on employees who do not wish to be represented); *NLRB v. Mayer,* 196 F.2d 286, 289 (5th Cir.1952) (ruling that employees have the right to designate a collective bargaining representative as well as the right to revoke such designation). Thus, the NFL defendants may not argue that they have been denied their opportunity to bargain with plaintiffs because plaintiffs have exercised their right to refrain from union representation.

Based on the foregoing, the court holds that the plaintiffs are no longer part of an "ongoing collective bargaining relationship" with the defendants. The NFLPA no longer engages in collective bargaining and has also refused every overture by the NFL defendants to bargain since November of 1989. The NFLPA further has abandoned its role in all grievance arbitrations and has ceased to regulate agents,

---

present case because a majority of the players clearly have indicated their wish not to be represented by any entity, including the NFLPA, during collective bargaining.

**7.** Where, as here, the union concedes that it no longer has the support of a majority of employees to serve as their collective bargaining representative, requiring a decertification proceeding makes no sense. Indeed, under standard NLRB proceedings, no decertification election would be held in a case where a union does not wish to continue as a collective bargaining representative. *See* National Labor Relations Board, *Casehandling Manual (Part 2) Representation Proceedings* §§ 11120–24 (Sept. 1989).

leaving them free to represent individual players without NFLPA approval. The plaintiffs have also paid a price for the loss of their collective bargaining representative because the NFL defendants have unilaterally changed insurance benefits and lengthened the season without notifying the NFLPA.[8]

Because no "ongoing collective bargaining relationship" exists, the court determines that nonstatutory labor exemption has ended. *Powell*, 888 F.2d at 568. In the absence of continued union representation, the Eighth Circuit's rationale for the exemption no longer applies because the parties may not invoke any remedy under the labor laws, whether it be collective bargaining, instituting an NLRB proceeding for failure to bargain in good faith or resorting to a strike. Accordingly, plaintiffs' motion for partial summary judgment striking defendants' labor exemption defenses contained in the second and third defenses of their answer is granted.

### 2. *NFL Defendants' Motion to Consolidate Powell and McNeil*

Under Federal Rule of Civil Procedure 42(a), the district court has broad discretion to determine whether it is appropriate to consolidate actions involving a "common question of law or fact." In deciding whether consolidation is appropriate, the court must balance the savings of time and effort resulting from consolidation against any inconvenience, delay or expense that it would cause. *See, e.g., Rohn & Haas Co. v. Mobil Oil Corp.*, 525 F.Supp. 1298, 1309 (D.Del.1981) (citations omitted). The party seeking consolidation bears the burden of showing that it would promote judicial convenience and economy. *See, e.g., Fleishman v. Prudential–Bache Sec., Inc.*, 103 F.R.D. 623, 624–25 (E.D.Wis. 1984). The *McNeil* plaintiffs are eight individual players whose contracts with their NFL employers expired on February 1,

1990. They bring a narrow claim under Section 1 of the Sherman Act seeking damages as a result of the allegedly illegal restraints imposed by the NFL defendants pursuant to Plan B during the 1990–91 NFL season. Before the *McNeil* plaintiffs filed suit, the players had voted to end their union status and the NFLPA had renounced its collective bargaining rights. Thus, a fundamental element of the Eighth Circuit's decision in *Powell*, the existence of an ongoing collective bargaining relationship between the players and the NFL defendants, is absent from the *McNeil* case. *See Powell*, 888 F.2d at 568.

In contrast, the *Powell* litigation is a class action challenging player restraints as far back as 1987, including allegations of abuse of monopoly power under Section 2 of the Sherman Act, a challenge to the uniform player contract, and other issues entirely absent from *McNeil*. Consolidation would also undermine a ruling of this court pursuant to an agreement of the parties to expressly exclude "any claims plaintiffs may have for damages respecting implementation of Plan B or any new system of player restraints after February 1, 1989" from prior class certification orders in *Powell*. *Powell v. National Football League*, No. 4–87–917, slip op. at 11 (D.Minn. Feb. 5, 1990). There is also a motion by the *Powell* plaintiffs pending before the court to decertify the class and dismiss the *Powell* case. Based on the foregoing, the court denies the NFL defendants' motion to consolidate *Powell* and *McNeil*.

### 3. *NFL Defendants' Appeal of the Magistrate Judge's Order and Motion for A Protective Order in McNeil*

On October 3, 1990, Magistrate Judge Boline granted plaintiffs' motion in *McNeil* to compel document production and deposition testimony of defendants. Defendants appeal the order and also seek a protective

---

**8.** Under similar circumstances, courts have held that if an employer is unable to demonstrate a good faith doubt in a union's continued majori-

ty status, such unilateral actions constitute an unfair labor practice. *See, e.g., Bryan Memorial*

order regarding that same discovery.[9] The magistrate judge's order should be reversed or modified only if the order "is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Based on a review of the file and proceedings herein, the court determines that the magistrate judge's order is neither clearly erroneous nor contrary to law, and thus denies defendants' motion for a protective order and affirms the magistrate judge's order of October 3, 1990 in all respects.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion to consolidate *Powell* and *McNeil* is denied;

2. Defendants' motion in *McNeil* for a protective order is denied;

3. Defendants' appeal of the magistrate judge's order of October 3, 1990, is denied and the magistrate judge's order is affirmed in all respect; and

4. Plaintiff's motion in *McNeil* for partial summary judgment is granted and defendants' labor exemption defenses as contained in the second and third defenses of their answer are hereby struck. Pursuant to 28 U.S.C. § 1292(b), the court also finds that resolution of this issue satisfies the requirements of certification because it involves a controlling question of law on which there is substantial ground for difference of opinion. The court further finds that an immediate appeal will materially advance the ultimate termination of this litigation.

Dated: May 23, 1991.

---

*Hosp. v. NLRB,* 814 F.2d 1259, 1262–63 (8th Cir.1987).

**9.** The court notes that defendants' motion for a protective order should have been filed with the magistrate judge according to D.Minn.LR. 7.1(a), which states that:

Unless otherwise ordered by the district judge or magistrate, all nondispositive motions, including but not limited to discovery ... shall be heard by the magistrate to whom the matter is assigned.

The motion for a protective order seeks to stay the same discovery that is compelled by the magistrate judge's order. Because the defendants' appeal and motion for protective order present one issue for decision, the court will make an exception and decide both motions at the same time.