Freeman **McNEIL**, Mark Collins, Lee Rouson, Niko Noga, Don Majkowski, Dave Richards, Irvin Eatman and Tim McDonald, Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE, the Five Smiths, Inc., d/b/a Atlanta Falcons; Buffalo Bills, Inc., d/b/a Buffalo Bills; Chicago Bears Football Club, Inc., d/b/a Chicago Bears; Cincinnati Bengals, Inc., d/b/a Cincinnati Bengals; Cleveland Browns, Inc., d/b/a Cleveland Browns; the Dallas Cowboys Football Club, Ltd., d/b/a Dallas Cowboys; PDB Sports, Ltd., d/b/a Denver Broncos; the Detroit Lions, Inc., d/b/a Detroit Lions; the Green Bay Packers, Inc., d/b/a Green Bay Packers; Hous-

---

**1476**

ton Oilers, Inc., d/b/a Houston Oilers; Indianapolis Colts, Inc., d/b/a Indianapolis Colts; Kansas City Chiefs Football Club, Inc., d/b/a Kansas City Chiefs; the Los Angeles Raiders, Ltd., d/b/a Los Angeles Raiders; Los Angeles Rams Football Company, Inc., d/b/a Los Angeles Rams; Miami Dolphins, Ltd., d/b/a Miami Dolphins; Minnesota Vikings Football Club, Inc., d/b/a Minnesota Vikings; KMS Patriots Limited Partnership, d/b/a New England Patriots; the New Orleans Saints Limited Partnership, d/b/a New Orleans Saints; New York Football Giants, Inc., d/b/a New York Giants; New York Jets Football Club, Inc., d/b/a New York Jets; the Philadelphia Eagles Football Club, Inc., d/b/a Philadelphia Eagles; B & B Holdings, Inc., d/b/a Phoenix Cardinals, Pittsburgh Steelers Sports, Inc., d/b/a Pittsburgh Steelers; the Chargers Football Company, d/b/a San Diego Chargers; the San Francisco Forty–Niners, Ltd., d/b/a San Francisco 49ers; the Seattle Professional Football Club, Ltd., d/b/a Seattle Seahawks; Tampa Bay Area NFL Football Club, Inc., d/b/a Tampa Bay Buccaneers; Pro–Football, Inc., d/b/a Washington Redskins; Defendants.

The FIVE SMITHS, INC.,
et al., Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION,
Defendant.

Civ. Nos. 4–90–476, 4–90–261.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 21, 1991.

Edward M. Glennon, Carol T. Rieger, Luke H. Terhaar, Charles J. Lloyd and Lindquist & Vennum, Minneapolis, Minn., Jeffrey L. Kessler, James W. Quinn, Craig Allely, Daniel Rubin and Weil, Gotshal & Manges, New York City, for plaintiffs.

James Fitzmaurice, Patrick J. Schiltz and Faegre & Benson, Minneapolis, Minn., John H. Schafer, Herbert Dym, Jeffrey Pash, Neil Roman, Richard W. Buchanan and Covington & Burling, Washington, D.C., Frank Rothman, and Skadden, Arps, Slate, Meagher & Flom, Los Angeles, Cal., and Shepard Goldfein, and Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on a motion to supplement the record made by the plaintiffs in *Five Smiths* and the defendants in *McNeil* ("the NFL parties"). Based on a review of the file, record and proceedings herein, the court denies the NFL parties' motions.

## BACKGROUND

In an order in the *McNeil* case dated May 23, 1991, the court held that the National Football League Players Association ("NFLPA") no longer functioned as a collective bargaining representative for the NFL players and thus the nonstatutory labor exemption ended. 764 F.Supp. 1351, 1358–59 (D.Minn.1991).[1] The NFL parties move to supplement the record in *McNeil* and *Five Smiths* with evidence allegedly obtained after that order which, they contend, will demonstrate that the NFLPA continues to bargain with the NFL teams

---

1. In that order the court, for convenience, combined one motion that was made in the *Powell* and *McNeil* cases with three motions that related solely to *McNeil*, including a determination on the NFLPA's status as a labor organization. The published version of that order, unfortu- nately, is captioned only "Powell v. National Football League." 764 F.Supp. 1351. To keep the record straight, the court will refer to that order as *McNeil* for purposes of the present motion.

on behalf of the players and that a majority of players support that representation.[2]

## DISCUSSION

■ The NFL parties move to supplement the record pursuant to *Federal Rules of Civil Procedure 60(b)*.[3] In order to justify Rule 60(b) relief, the moving party bears the burden of establishing that:

1. The evidence is actually "newly discovered";

2. The movant exercised due diligence;

3. The evidence is material, not merely cumulative or impeaching; and

4. The evidence would probably produce a different result. *See, e.g., Peterson by Peterson v. General Motors Corp.*, 904 F.2d 436, 440 (8th Cir.1990). Such relief is within the trial court's discretion. *See, e.g., Jacobs v. DeShetler*, 465 F.2d 840, 843 (6th Cir.1972). A party may also supplement the record after summary judgment has been granted if "the evidence is of such a character that it would probably change the outcome of the proceedings." *Fernhoff v. Taho Regional Planning Agency*, 622 F.Supp. 121, 122 (D.Nev.1985) (citations omitted) (applying that standard to deny motion to supplement record). The NFL parties proffer various documents which the court will address in turn.

### 1. The Duberstein Letter

■ The NFL parties first proffer a letter dated September 19, 1991, from Michael J. Duberstein, research director for the NFLPA, to all of the NFL teams. Duberstein sent "the NFLPA's most recent salary data on NFL players" with the letter and asked all of the general managers to

correct "it where it is wrong." The NFL parties argue that Duberstein's letter "raises an issue of fact as to whether the NFLPA has indeed abandoned its role as collective bargaining agent for the players." (NFL parties' Mem.Supp. at 3). The NFL parties concede, however, that when the NFLPA was the players' collective bargaining representative, the NFL parties automatically sent the requested salary information to the NFLPA pursuant to the 1982 Collective Bargaining Agreement. As the NFLPA points out, Duberstein's request for accurate salary information is necessary because the NFLPA no longer collectively bargains on behalf of the NFL players. Moreover, the Duberstein letter is similar to a prior written offer to provide salary information to club managers made by Gene Upshaw, the NFLPA's executive director. Both sides produced copies of the Upshaw letter in the *McNeil* litigation prior to the court's order of May 23, 1991. The court thus concludes that the Duberstein letter would not "produce a different result" on the labor exemption issue because it undercuts rather than supports the NFL parties' contention that the NFLPA continues to act as the players' collective bargaining representative.

### 2. The NFLPA's Draftee Salary Data

■ The NFL parties also contend that two documents prepared by the NFLPA concerning salary information for the 1990 draft establish that "the NFLPA merely accomplishes its bargaining role through its surrogates—the players' agents." (NFL parties' Mem.Supp. at 4).[4] The front pages of the proffered documents plainly indicate that they are confidential, and to be used internally by the NFLPA, not to be

**2.** The court applied its *McNeil* holding concerning the status of the NFLPA as precedent in the *Five Smiths* case in an order dated June 27, 1991. *Five Smiths v. National Football League Players Ass'n*, No. 4–90–261, slip op. at 2 (D.Minn June 27, 1991). Both sides agree that the court thus incorporated the *McNeil* holding into the *Five Smiths* case. The court will assume without deciding that issue for purposes of these motions.

**3.** Federal Rules of Civil Procedure 60(b) provides that:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)....

**4.** The proffered evidence consists of a document entitled "Benchmarks for 1990 Draftee Deals" and a report captioned "1990 Draft Update".

released to players or their agents. The NFL parties proffer no other evidence to support their contention that the player agents work in concert with the NFLPA. The record demonstrates that the agents negotiate with the NFL teams solely on behalf of the individual players whom they represent; there is no evidence showing that the player agents have authority to reach any agreement regarding salary or other conditions of employment on behalf of any other players. Based on the foregoing, the court denies the NFL parties' request to supplement the record in *McNeil* or *Five Smiths* with the NFLPA's salary data concerning the 1990 draft.

3. **The NFLPA Member Contract Advisor Survey**

■ The NFL parties further submit a survey of player agents that the NFLPA conducted in September 1990. The survey asked whether the agents found the salary information provided by the NFLPA to be important or useful in connection with their individual negotiations with the NFL teams on behalf of their clients. The court considered similar evidence regarding the NFLPA's activities in the *McNeil* case; the fact that the NFLPA conducted the survey or that the agents find the exchange of salary information useful does not alter the court's decision concerning the status of the NFLPA.[5] The NFLPA also concedes that a majority of the NFL players continue to support many of the NFLPA's activities, including its collection and analysis of salary data. As this court previously determined, however, the majority of the players no longer support the NFLPA as their collective bargaining representative and the NFL parties' attempts to convince the court to force the NFLPA or the players to resume a voluntary bargaining relationship are unavailing. *See McNeil,* 764 F.Supp. at 1356–57.

4. **The Upshaw Letter**

■ The NFL parties also seek to supplement the record with a letter dated May 25, 1990, from Gene Upshaw to NFL players asking members of the NFLPA to continue their participation in the NFLPA's group licensing programs. The NFL parties argue that the players' continued support of the NFLPA as a group licensing organization and professional association proves that the NFLPA still functions as a collective bargaining organization. As discussed above, the court rejects this contention, finding that the NFLPA's activities are consistent with those of a professional association not a labor union. *See also McNeil,* 764 F.Supp. at 1356–57 (listing reasons why the collective bargaining relationship ended).[6]

5. **The NLRB's Advisory Opinion**

■ The NFL parties also provide the court with an advisory opinion of the NLRB issued in June 1990, which states that "the NFLPA has not merely disclaimed representative status; it has restructured itself so that it no longer functions as a collective bargaining agent." It is unclear, however, what action the NFL parties want the court to take and the court declines to address the opinion for purposes of these motions because it concludes that the opinion is not properly characterized as newly discovered evidence.

Based on the foregoing, the court finds that none of the proffered evidence meets the requirements of Rule 60(b) because it would not alter the court's ruling on labor exemption issue. The court thus denies the NFL parties' motion to supplement the record in *McNeil* and *Five Smiths.*

The NFLPA also seeks to recover their costs, expenses and attorneys' fees incurred when responding to the motions pursuant to 28 U.S.C. § 1927 and Federal Rules of Civil Procedure 11. The NFLPA

---

5. The court also notes that this evidence was produced in *McNeil* prior to the court's order concerning the status of the NFLPA.

6. The court also concludes that Upshaw's letter is not newly discovered evidence because it was first produced to counsel for the NFL parties in September of 1990. *See, e.g., Taylor v. Texgas Corp.,* 831 F.2d 255, 259 (11th Cir.1987) (evidence is not considered newly discovered under Rule 60 if it is in the possession of the moving party or the party's attorney).

argues that the NFL parties' attempt to supplement the record in *McNeil* and *Five Smiths* without also seeking a reversal or reconsideration of the court's prior orders demonstrates that the motions to supplement are frivolous. Such sanctions are within the court's discretion, *see, e.g., Chambers v. NASCO, Inc.,* —— U.S. ——, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)), and the court declines to impose such sanctions.