Delores VANCE, d/b/a D & J Trucking, a sole proprietorship; Don Vance, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

Delores VANCE, d/b/a D & J Trucking; Don Vance, Respondents.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

DENART COAL COMPANY, INCORPORATED and its Alter Ego, V Coal Company, Incorporated; Delores Vance, an Individual, Respondents.

Nos. 95–1261, 95–1779 and 95–1780.

United States Court of Appeals, Fourth Circuit.

Argued July 10, 1995.

Decided Aug. 25, 1995.

**ARGUED:** Daniel Charles McCarthy, Greenwood, Indiana, for Petitioners. Angela Michelle Washington, National Labor Relations Board, Washington, D.C., for Respondent. **ON BRIEF:** Frederick L. Feinstein, General Counsel, Linda Sher, Acting Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Linda Dreeben, Supervisory Attorney, National Labor Relations Board, Washington, D.C., for Respondent.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

Enforcement granted by published per curiam opinion.

## OPINION

PER CURIAM:

Petitioners Delores Vance d/b/a D & J Trucking ("D & J") and Don Vance appeal a decision of the National Labor Relations Board (the "Board"). In its decision, the Board held that D & J is a single employer with Denart Coal Co., Inc. ("Denart"), and V Coal Co., Inc. ("V Coal"), and that D & J and its owners, Don and Delores Vance, are therefore jointly and severally liable to remedy the unfair labor practices committed by Denart and V Coal. Finding that the Board's decision is supported by substantial evidence on the record as a whole, we affirm.

### I.

On August 14, 1989, the Board issued an order adopting the finding of Administrative Law Judge ("ALJ") Wallace H. Nations that Denart and V Coal violated §§ 8(a)(5) and (1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(a)(5) and (1), by failing to abide by the terms of their collective bargaining agreement with the United Mine Workers of America, District 17 (the "Union"), and by refusing to provide information to the Union.[1] The Board also adopted

---

1. We grant the Board's motion to file a supplemental appendix containing ALJ Nations' decision and the Board's order adopting the decision. We note that the factual findings and legal con-

the ALJ's finding that Denart and V Coal were alter ego corporations commonly owned and managed by Vance family members. Denart was 75% owned and controlled by Don Vance; and V Coal was owned by Don Vance's sons, Don E. and Michael Vance, and was operated by Don Vance. The Board's order required, in part, that Denart/V Coal remedy any losses the employees suffered due to the unfair labor practices. On March 1, 1990, this Court enforced the Board's order in full. *NLRB v. Denart Coal Co.*, No. 90–1004 (Mar. 1, 1990) (unpublished order).

On June 4, 1990, the Board's Regional Director issued a compliance specification, alleging, *inter alia*, that in addition to Denart/ V Coal, D & J Trucking, a sole proprietorship owned by Delores Vance, was liable for the backpay due under the conditions of the Board's order. The specification also claimed that Don and Delores Vance were personally, jointly, and severally liable for the backpay amounts.[2] On January 28, 1991, the Board granted the General Counsel's Motion for Partial Summary Judgment against Denart/V Coal for failing to file an answer to the compliance specification and found that Denart/V Coal admitted as true the allegations against them in the compliance specification. *Denart Coal Co.*, 301 N.L.R.B. 391, 392 (1991). The Board, however, remanded for a hearing on the issue of the single employer status of Denart/V Coal and D & J. The Board added that any parties found to constitute a single employer with Denart/V Coal would be bound by the actions of Denart/V Coal, including the failure to file an answer to the compliance specification. *Id.* at 392–93.

In his initial supplemental decision dated October 14, 1992, ALJ Hubert E. Lott found that the General Counsel did not present sufficient evidence to establish that D & J is a single employer with Denart/V Coal, and the judge dismissed the compliance specification with regard to Petitioners. In its remand order issued March 26, 1993, the Board

directed the judge to explain his finding that the documentary evidence did not contradict Delores Vance's testimony that she was the sole owner of D & J.

In his second supplemental decision dated March 25, 1994, Judge Lott reaffirmed his finding that D & J is not a single employer with Denart/V Coal. On December 16, 1994, the Board reversed the ALJ's judgment and found that D & J and Denart/V Coal constitute a single employer. *Denart Coal Co.*, 315 N.L.R.B. 850 (1994). The Board therefore held that D & J is liable with Denart/V Coal for remedying the unfair labor practices and that because D & J is a proprietorship, its principals, Don and Delores Vance, are personally liable for the obligations incurred by D & J. The Petitioners appeal from this order of the Board.

## II.

 Petitioners' appeal presents the single issue of whether substantial evidence supports the Board's finding that D & J and Denart/V Coal constitute a single employer such that D & J and its owners, Don and Delores Vance, are jointly and severally liable to remedy the unfair labor practices committed by Denart/V Coal. The Board's finding that two entities constitute a single employer is essentially a factual determination and, as such, should not be disturbed when supported by substantial evidence on the record as a whole. *NLRB v. Emsing's Supermarket, Inc.*, 872 F.2d 1279, 1289 (7th Cir. 1989); *Penntech Papers, Inc. v. NLRB*, 706 F.2d 18, 24–25 (1st Cir.), *cert. denied*, 464 U.S. 892, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983); *see also* 29 U.S.C. §§ 160(e) and (f). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB v. Peninsula Gen. Hosp. Medical Ctr.*, 36 F.3d 1262, 1269 (4th Cir.1994) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

---

clusions in these decisions, as they relate to Petitioners, are not controlling in this case because Petitioners were not parties to these prior proceedings.

**2.** The General Counsel also claimed that Vance Trucking, Laing Enterprises, and Don E. and Michael Vance, as individuals, were liable. In its order on December 16, 1994, the Board, in agreement with the ALJ, dismissed these allegations.

It is "more than a scintilla but less than a preponderance." *Id.* (quoting *Elliott v. Administrator, Animal & Plant Health Inspection Serv., USDA,* 990 F.2d 140, 144 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 191, 126 L.Ed.2d 149 (1993)). Although a reviewing court accords "due deference" to the Board's factual findings under the substantial evidence standard of review, *NLRB v. Brown,* 380 U.S. 278, 292, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965), the court does not "mechanically accept[ ]" those findings, *Flack v. Cohen,* 413 F.2d 278, 279 (4th Cir. 1969), *see also Peninsula,* 36 F.3d at 1269. As to the Board's application of the law to the facts, a reviewing court must affirm the Board's application if it is reasonable and consistent with the NLRA. *NLRB v. Yeshiva Univ.,* 444 U.S. 672, 691, 100 S.Ct. 856, 867, 63 L.Ed.2d 115 (1980); *Peninsula,* 36 F.3d at 1269.

 The law is well settled that the controlling criteria in determining whether two or more employing entities constitute a single employer are (1) common ownership, (2) interrelation of operations, (3) common management, and (4) centralized control of labor relations. *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965) (per curiam); *Walter N. Yoder & Sons, Inc. v. NLRB,* 754 F.2d 531, 535–36 (4th Cir.1985). No one factor is determinative, and the Board need not find extensive evidence that all four criteria are satisfied in order to find single employer status. *I.B.E.W., Local 613 v. Fowler Indus., Inc.,* 884 F.2d 551, 553 n. 3 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1783, 108 L.Ed.2d 785 (1990); *NLRB v. Don Burgess Constr. Corp.,* 596 F.2d 378, 384 (9th Cir.), *cert. denied,* 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979). Ultimately, single employer status is characterized by the absence of an "arm's length relationship found among the integrated companies." *Local No. 627, Int'l Union of Operating Eng'rs v. NLRB,* 518 F.2d 1040, 1046 (D.C.Cir.1975), *aff'd in pertinent part*

*sub nom., South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs,* 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976).

 Petitioners present two arguments to contend that the Board should have addressed considerations beyond these single employer factors in determining their liability in this case.[3] First, Petitioners rely on principles of limited liability to contend that the Board should have required the General Counsel to prove fraud or other wrongdoing before the Board pierced the corporate veil and held Don and Delores Vance personally liable for conduct attributed to D & J. As the Board recognizes, Petitioners' extensive discussion of individual liability for corporate violations is irrelevant because D & J is a proprietorship, not a corporation. *See Wayne Electric, Inc.,* 241 N.L.R.B. 1056, 1057–58 & n. 4 (1979), *enforced,* 636 F.2d 1227 (9th Cir.1980).

 Second, Petitioners argue that, because they have offered evidence that they had legitimate nondiscriminatory reasons for engaging in the transactions on which the Board relied to find single employer status, the Board should have required the General Counsel to show that Petitioners would not have conducted the particular transactions but for the purpose of circumventing the NLRA. In advocating this burden-shifting scheme, Petitioners rely on *Wright Line, A Div. of Wright Line, Inc.,* 251 N.L.R.B. 1083 (1980), *enforced,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). As the Board argues, however, *Wright Line* is wholly inapplicable to this case. In *Wright Line,* the Board established the framework for assessing whether an employer was unlawfully motivated in discriminating against an employee so as to encourage or discourage union membership. The determination of single employer status does not depend on the employer's motivation, but rather on evidence of common ownership, common management, oper-

---

**3.** In addition to these arguments, Petitioners assert that the Board should have considered other factors in analyzing whether D & J and Denart/V Coal constitute a single employer. Their alleged factors, however, are not part of the four-factor test for establishing whether two entities constitute a single employer, and we therefore need not consider them.

ational interrelatedness, and common control of labor relations. *See Penntech Papers, Inc. v. NLRB,* 706 F.2d at 24 (single employer analysis does not involve inquiry into unlawful motive or intent). Petitioners' allegation that they offered legitimate business rationales for each transaction and document allegedly showing single employer status is thus irrelevant.

■ Finding that Petitioners' arguments lack merit, we conclude that the factors of common ownership, interrelation of operations, common management, and centralized control of labor relations govern our inquiry in this case; and we address the evidence of each criterion in turn. Petitioners correctly recognize that, in assessing this evidence under substantial evidence review, we are obliged to analyze the whole record, including the evidence that fairly detracts from the evidence relied upon by the Board. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487–88, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951); *Peninsula,* 36 F.3d at 1269. However, we are not required to reverse the Board's findings if evidence supports Petitioners' arguments because "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Peninsula,* 36 F.3d at 1269 (quoting *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966)).

### A. *Common Ownership*

In his first supplemental decision, the ALJ found "uncontradicted" Delores Vance's testimony that she was the sole owner of D & J and that Don Vance was not involved in D & J operations. In remanding the case to the ALJ, the Board directed the judge to "explain or reconsider his credibility findings in light of the documentary evidence, which he did not discuss in his supplemental decision." *Denart,* 315 N.L.R.B. at 851. In his second decision, the judge reasoned that because the compliance specification did not allege Don Vance to be an owner of D & J, "whether or not Delores Vance is the sole proprietor as she testified, is not relevant to this proceeding." *Id.*

In its decision below, the Board found that the ALJ's reasoning was "seriously flawed." *Id.* First, the Board determined that the judge committed plain error by not performing the task that the Board's remand order directed him to complete. Second, the Board reasoned that the fact that the compliance specification did not contain a specific allegation that Don Vance owned D & J was immaterial because the specification sufficiently raised the issue of whether Don Vance was a principal of D & J and because the issue was fully litigated. Concluding that "the judge failed to perform his role as fact finder on two occasions," *id.,* the Board proceeded to assess the documentary evidence in the record.

■ On appeal, Petitioners concede that Board precedent establishes that common ownership exists where the owner of one company or a member of the owner's family maintains a substantial ownership interest in another company. Petitioners, however, complain that the Board improperly disregarded its own precedent by reviewing *de novo* the credibility determinations resolved by the ALJ. Petitioners argue that to reach the conclusion that certain documents were inconsistent with Delores's testimony, the Board improperly judged her credibility. In contrast, the Board concluded in its decision that the ALJ did not actually make a credibility determination regarding the testimony of Delores Vance.

■ We hold that the Board reasonably reviewed *de novo* the documentary evidence in light of Delores Vance's testimony. Initially, we note that Board precedent does not establish that the Board may never review the credibility determinations of an ALJ. Rather, the Board's policy of reviewing an ALJ's credibility findings hinges on the ALJ's "advantage of observing the witnesses while they testified." *Standard Dry Wall Products, Inc.,* 91 N.L.R.B. 544, 545 (1950), *enforced,* 188 F.2d 362 (3d Cir.1951). The Board therefore attaches "great weight to a[n ALJ's] credibility findings insofar as they are based on demeanor" and will not overrule an ALJ's credibility determinations based on the demeanor of witnesses unless a

"clear preponderance of *all* the relevant evidence convinces [the Board] that the [ALJ's] resolution was incorrect." *Id.* Nonetheless, where the ALJ does not base his credibility findings on demeanor, the Board may make independent evaluations of credibility based on the "weight of evidence, established facts, inherent probabilities, and reasonable inferences drawn from the record as a whole." *Storer Communications, Inc.*, 297 N.L.R.B. 296, 296 n. 2 (1989).

In his initial supplemental decision, the ALJ considered Delores's testimony in light of other evidence indicating that Don Vance would see that D & J drivers paid their union dues. The ALJ, however, simply stated that Delores's testimony was "uncontradicted"; he did not make an explicit finding that her testimony was credible, and he did not assess her testimonial demeanor. The ALJ also did not discuss the credibility of Delores's testimony in his second supplemental decision. As the Board concluded, "instead of crediting and relying upon Delores Vance's testimony, it appears that the judge viewed the testimony as having no bearing on the outcome of this case." *Denart*, 315 N.L.R.B. at 852. Accordingly, in the absence of a credibility determination based on Delores Vance's demeanor, we conclude that the Board reasonably "exercis[ed] its responsibility to assess the testimony in the light of the record as a whole." *Royal Typewriter Co. v. NLRB*, 533 F.2d 1030, 1042–43 n. 12 (8th Cir.1976), *abrogated on other grounds by Bryan Memorial Hosp. v. NLRB*, 814 F.2d 1259, 1262 n. 4 (8th Cir.), *cert. denied*, 484 U.S. 849, 108 S.Ct. 147, 98 L.Ed.2d 103 (1987).

From our examination of the documentary evidence and Delores's testimony, we find substantial evidence to support the Board's conclusion that Denart/V Coal and D & J share common ownership because D & J is commonly owned by Don and Delores Vance. For instance, Don endorsed several checks totaling approximately $135,000 made payable to D & J by signing them "D & J Trucking/ Don Vance/Owner." He signed a personal financial statement listing D & J's trucks as his own asset. On a credit application with a bank for a personal loan for $10,000, Don Vance identified himself as "owner" of D & J and listed D & J's bank account as his own.[4] Furthermore, the record indicates that Don and Delores started D & J with money from their joint bank account, that they subsequently invested over $170,000 in D & J, and that Don personally guaranteed loans to Delores Vance d/b/a D & J Trucking without any evidence of consideration for undertaking the risk. *See Rainbow Press of Fredonia, Inc.*, 287 N.L.R.B. 477, 480 (1987) (guarantee obligations of another entity supported finding of common ownership or financial control). Contrary to Petitioners' contentions, these examples of husband-wife involvement are not irrelevant, as the Board has previously held that the initial funding of one entity from a joint husband-wife account and the continuing involvement of one spouse in both enterprises sufficiently demonstrated the presence of common ownership. *H.A. Green Decorating Co.*, 299 N.L.R.B. 157, 163 (1990), *enforced*, 983 F.2d 1073 (7th Cir.1992).

In challenging the documentary evidence, Petitioners argue that the Board erred in relying on the documents stating that Don Vance owned D & J because those documents were not properly authenticated and because Delores Vance, an admitted owner of D & J, did not ratify the documents. This contention lacks merit. Petitioners provided these documents to the General Counsel pursuant to a subpoena seeking business records of Delores Vance d/b/a D & J Trucking, and Delores Vance's attorney specifically stated that he had no objection to the admission of the documents at the proceeding before the ALJ. Petitioners also contend that the Board improperly considered the fact that Don Vance personally guaranteed loans for Delores Vance d/b/a D & J Trucking because Delores Vance testified that the banks required someone to co-sign or guarantee her loans. Regardless of whether the banks required the signatures of both spouses, the

---

**4.** Although Petitioners emphasize that Delores Vance testified that she did not complete the credit application because her middle initial was incorrect on the form, Delores's testimony does not indicate that the application's listing Don Vance as "owner" of D & J is not entitled to some weight in assessing common ownership.

Board properly considered and gave some weight to the fact that Don Vance did personally guarantee loans for Delores d/b/a D & J Trucking. Furthermore, the bank's requirement does not explain Don Vance's other actions in endorsing D & J checks and in listing himself as the owner of D & J or its assets on other financial forms.

## B. *Interrelation of Operations*

 Second, we find that substantial evidence in the record supports the Board's conclusion that D & J and Denart/V Coal were interrelated in their operations. The evidence demonstrates that the companies interacted regularly in their normal business dealings. Denart and V Coal conducted the business of mining coal. D & J hauled coal for Denart and V Coal as well as for other coal mines. D & J also leased mining equipment to Denart and V Coal and to other companies after Denart and V Coal ceased operations.

In addition to this routine business interaction, the record shows that a significant financial interrelationship existed between the companies. This interrelationship is important to the single employer determination because the Board has previously held that actions indicating that companies are operated "in such a manner that the exigencies of one would be met by the other" demonstrate an interrelation of operations and "less than an 'arm's length relationship' between the companies." *Emsing's Supermarket, Inc.,* 284 N.L.R.B. 302, 304 (1987) (transfer of money from operating store to meet final payroll of closing store evidenced financial interdependency of two stores and absence of arm's length relationship), *enforced,* 872 F.2d 1279 (7th Cir.1989).

Considering this legal standard and the evidence as a whole, we find that the record

5. Contrary to Petitioners' suggestion, the Board reasonably relied on transactions occurring after Denart and V Coal ceased operations. As the Board noted, Denart and V Coal engaged in significant transactions after they ceased operations which demonstrate the interrelatedness of D & J, Denart, and V Coal.

6. Although Petitioners wage singular attacks on each of these alleged rationales, the companies' interrelation of operations is also supported by

indicates several examples when D & J and Denart/V Coal conducted transactions with one another such that the financial needs of one company were met by another. For example, Don and Delores Vance obtained a personal bank loan to pay V Coal's payroll of $20,000.[5] In paying the money to V Coal, Don and Delores did not require interest on the repayments to them or to D & J. The record does not show that V Coal repaid the $20,000, only that Don E. Vance repaid personal obligations of $24,000 and $11,000 to Delores Vance, his mother. Furthermore, approximately one week after D & J loaned V Coal the $20,000, D & J reclassified a $50,000 loan to V Coal as uncollectible. In addition, Delores Vance d/b/a D & J Trucking made other loans to V Coal for which there is no documentary evidence that interest payments were required or that full repayment was demanded. Delores also made a no-interest loan of $40,000 to Denart, and the parties did not execute a written note or agreement for the loan. *See Il Progresso Italo Americano Publishing Co.,* 299 N.L.R.B. 270, 288 (1990) (non-repayment of loans established connection between companies); *Monongahela Steel Co.,* 265 N.L.R.B. 262, 269 (1982) (interest-free loans evidenced lack of arm's length transactions). Finally, after V Coal ceased operations, it transferred $27,000 from its account to D & J. D & J thereafter paid V Coal's creditors with the money it had received from V Coal. Contrary to Petitioners' argument, V Coal's actions were not equivalent to depositing money in a bank and obtaining cashiers checks to pay suppliers because D & J did not normally perform financial services for unrelated entities. These transfers thus demonstrate the companies' financial interrelationship.[6]

## C. *Common Management*

 Third, we find that substantial evidence in record supports the Board's finding

the facts that Don Vance agreed with the Union that Denart would pay Union dues on behalf of D & J employees, that Petitioners all share the same accountant (Don Vance's cousin, Millard Ellis), and that D & J's facility is located on property leased by Denart. *See Don Burgess Constr.,* 596 F.2d at 385 (fact that entities share same accountant supported finding of interrelation of operations).

that D & J and Denart/V Coal share common management because substantial evidence demonstrates that Don Vance, the admitted manager of Denart/V Coal, was also involved in the management of D & J. For instance, the record shows that Don Vance submitted a financial statement with a bank in which he stated that D & J was his "business or occupation." The record also contains a credit application in which Don and Delores Vance jointly applied as D & J Trucking for a $60,000 loan. Don also signed a Truck Purchaser's Statement on behalf of D & J to buy a 1985 Mack truck for D & J while Delores was on vacation.[7]

Additionally, Don Vance, Delores Vance, and their son Don E. Vance discussed the business of all the companies at weekly meetings. Petitioners question the relevance of these meetings because they contend that the conversations occurred over the dinner table and simply consisted of family discussions about each family member's activities, which naturally included work activities. This characterization, however, is contradicted by the testimony of Millard Ellis, the accountant for the Vance family businesses. Ellis testified before the ALJ that he met weekly with Don, Delores, Don E., and occasionally Michael, for the purpose of discussing the Vance family businesses. Ellis testified that, although the meetings were informal, they were "strictly business" and were not family functions. Even considering the informality of these discussions, we find that these "meetings" support the finding of common management between D & J and Denart/V Coal, especially given that Denart/V Coal had no formal meetings of the board of directors. As the Board concluded, these family meetings, in the absence of formal meetings, confirm the companies' common management.

### D. *Centralized Control of Labor Relations*

Regarding this fourth and final factor, the Board held that the evidence of Don Vance's involvement in D & J's labor relations is "limited but significant." *Denart,* 315

N.L.R.B. at 853. Delores Vance denied in her testimony before the ALJ that Don Vance was involved in hiring D & J employees and in discussions with D & J employees regarding their wages and terms and conditions of employment. In analyzing Don's involvement in D & J's labor relations, however, the Board relied heavily on the fact that Don Vance met with a Union representative concerning D & J employees and agreed that Denart would pay the union dues of D & J employees. The Board also relied on evidence that Don Vance represented D & J in a proceeding before the West Virginia Department of Energy concerning a D & J employee who was fatally injured on the job.

As Petitioners contend, this evidence does not decisively demonstrate that Don Vance had any direct control over the labor relations of D & J employees. Throughout the arrangement in which Denart paid the dues, Don maintained that he did not want to be responsible for D & J employees, and the Union acknowledged in writing that the employees were not Denart employees and were not on Denart's payroll. Furthermore, the record is inconsistent as to whom Don Vance was representing in attending the agency hearing. Although the Union representative testified that Don represented D & J at the hearing and that D & J was fined for the accident, Delores Vance testified that D & J was not cited or fined for the accident and that she was not summoned to appear at the hearing.

Despite the shortcomings in the evidence on centralized control of labor relations, as stated above, the Board need not find extensive evidence that all four criteria are present. *Fowler Indus.,* 884 F.2d at 553 n. 3; *Don Burgess Constr.,* 596 F.2d at 384. In this case, given the considerable evidence demonstrating the other three factors, we find that substantial evidence on the record as a whole supports the Board's finding that D & J and Denart/V Coal are a single employer and that D & J and its owners, Don and Delores Vance, are jointly and severally

---

7. Petitioners object to the relevance of this purchase because they assert that Delores Vance still made the decision to purchase the truck. However, they point to no record evidence demonstrating who actually made the decision to purchase the truck.

liable to remedy the unfair labor practices committed by Denart/V Coal.

### III.

For the foregoing reasons, we hold that substantial evidence on the record as a whole supports the Board's decision and that the Board is therefore entitled to enforcement of its order.

*ENFORCED.*