TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY PENSION FUND, et al., Plaintiffs,

v.

BUDGET PLUMBING CORPORATION, INC., et al., Defendants.

No. CIV.A. AW–99–1542.

United States District Court, D. Maryland.

Aug. 31, 2000.

Charles W. Gilligan, R. Richard Hopp, Keith R. Bolek, and O'Donoghue & O'Donoghue, Washington, DC, for Plaintiffs.

John M.G. Murphy and Ober Kaler, Grimes and Shriver, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Presently before the Court are two motions: Plaintiff's Motion for Summary Judgment, and Defendant Budget Plumbing's Cross–Motion for Summary Judgment. The parties have filed oppositions and replies accordingly, and the motions are ripe for resolution. For the reasons discussed below, the Court will grant Plaintiff's motion for summary judgment, deny Defendant's cross-motion for summary judgment, and close this case.

## BACKGROUND

Plaintiffs Trustees of the National Automatic Sprinkler Industry Pension Fund, Trustees of the National Automatic Sprinkler Industry Welfare Fund, Trustees of the Sprinkler Industry Supplemental Pension Fund, Trustees of the National Automatic Sprinkler Industry Local 669 UA Education Fund, Trustees of the National Fire Sprinkler Industry Promotion Fund, and Trustees of the National Automatic Sprinkler Apprenticeship Fund of New York ("NASI Funds") bring this suit against Budget Plumbing Corporation ("Budget Plumbing") and Budget Fire Protection, Inc. ("Budget Fire") for delinquent contributions due and owing to them under the terms of collective bargaining agreements, restated agreements, and declarations of trust. Plaintiffs allege Defendants owe delinquent funds for underreported and/or unreported hours. Plaintiffs are trustees of multiemployer employee benefit plans under Section 3(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3). *See Restated Agreements and Declarations of Trusts,* Plaintiffs' Exhibits 1–4; *Decl. of Michael W. Jacobson,* Plaintiff's Exhibit 5, at ¶ 2 ("Jacobson Decl."). The NASI Funds were established pursuant to an Agreement and Declaration of Trust with Road Sprinkler Fitters Local Union No. 669 and the National Fire Sprinkler Association as settlors. *See Jacobson Decl.,* at ¶ 2. The NASI Funds provide retirement,

medical, and other benefits to employees working in the automatic fire protection sprinkler industry throughout the United States. *Id.* Plaintiff Funds are funded through contributions made pursuant to collective bargaining agreements between various employers in the fire protection industry and various Sprinkler Fitters Local Unions.

Budget Plumbing is a Minnesota Corporation, which is engaged as a contractor in the plumbing industry. Beginning in November 1993, Budget Plumbing engaged as a contractor in the automatic fire sprinkler industry. Mr. Frederic Thomas Muralt ("Tom Muralt") was the president of Budget Plumbing at all times relevant to this suit. He held a 40% ownership interest in Budget Plumbing. *See Muralt Dep.* at 13. The other 60% was held by his father, CEO Fredrick Muralt ("Fred Muralt"). On or about March 15, 1995, Tom Muralt and an employee of Budget Plumbing, Robert H. Petersen, incorporated Budget Fire Protection, Inc. *See Petersen Depo.*, at 29–30; *Muralt Dep.*, at 65. Muralt was the president and 90% owner of Budget Fire, and Petersen was a 10% owner. *See Budget Fire Protection, Inc. Corporate Records,* Plaintiffs' Exhibit 12, at BFP00040–41; *Petersen Dep.* at 24–25; *Muralt Dep.* at 32. From the date of its incorporation to late 1996, Budget Fire was a Minnesota corporation engaged as a contractor in the automatic fire sprinkler industry. Budget Fire ceased operations in 1996 and is no longer in existence. *See Petersen Dep.* at 36, 136–37; Plaintiff's Exhibit 12, at BFP00042.

Both Budget Plumbing and Budget Fire were obligated to make contributions to the NASI Funds under the agreements. Budget Plumbing agreed to be bound to the contribution requirements when it signed an "Assent and Interim Agreement" with the Road Sprinkler Fitters Local Union No. 669 by which it agreed to be bound by the collective bargaining agreement ("CBA"). *See Agreement,* Plaintiffs' Exh. 6; *Muralt Dep.* at 60. The interim agreement also provided that if Local 669 and the National Fire Sprinkler Association negotiated a new agreement, Budget Plumbing would be bound by it. In April 1994, a new CBA was negotiated. Petersen signed a CBA on behalf of Budget Fire Protection with Local 417. Pursuant to the bargaining agreements and restated agreements and declarations of trusts of the NASI Funds, both Budget Plumbing and Budget Fire were required to file monthly remittance reports with the NASI Funds to show all hours worked by its employees in covered employment. *See Restated Agreement and Declaration of Trust,* Plaintiffs' Exhibit 1, at 24–25. These reports were to be made to the Funds by the 15th day of the month following the month in which the subject work was performed. *Id.* The employers have the responsibility to self-report the hours worked by employees in covered employment on monthly reports which are subject to auditing for accuracy *Id.* In September 1996, an audit revealed that Budget Plumbing and Budget Fire had underreported the actual hours worked to the NASI Funds. According to Plaintiffs, such reporting resulted in contributions due and owing to them in the amount of $11,895.24. Furthermore, Plaintiffs claim Defendants failed to file a report and submit contributions for the months of September and October 1996. Thus, Plaintiffs allege Defendants owe $8,203.48 in funds for these two months. The main issue for resolution is whether Budget Plumbing is liable for the full value of these delinquencies, including those of the now defunct Budget Fire. The Court will discuss this central issue of liability below in its resolution of the pending motions.

## DISCUSSION

### I. *Standard for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material facts exists and the moving party is entitled to judgment as a

matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the evidence of a nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). To defeat such a motion, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (citations omitted). In determining whether genuine and material factual disputes exist, the Court has reviewed the parties' respective memoranda and the many exhibits attached thereto, construing all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. *Parties' Motions for Summary Judgment*

Plaintiffs argue Budget Plumbing is jointly and severally liable under the doctrines of single employer and alter ego. Their primary contention is that the relationship between Budget Plumbing and Budget Fire is that of a "single integrated business enterprise", and that Budget Plumbing must be held responsible for the delinquent funds due. Defendant Budget Plumbing filed a cross-motion for summary judgment alleging that as a corporation separate and independent from Bud-

get Fire, Plaintiffs cannot hold it liable for the delinquent contributions. As both motions are founded upon this limited issue, the Court will discuss them together. In short, the Court concludes that each entity is liable for the debts of the other under the doctrines of single employer and alter ego.

### A. Applicable Legal Standards

The doctrines of "single employer" and "alter ego" govern whether two entities will be deemed a single, continuous employer bound by the terms of a CBA signed by one of them. *See Vance v. NLRB*, 71 F.3d 486, 489–90 (4th Cir.1995); *NLRB v. McAllister Bros., Inc.*, 819 F.2d 439, 444 (4th Cir.1987). Courts use the National Labor Relations Board's elements of single employer and alter ego to determine whether two entities are so closely related as to be considered a single employer, and therefore, jointly and severally liable for delinquent contributions. *See Massachusetts Carpenters Central Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304 (1st Cir.1998); *UA Local 343 v. Nor–Cal Plumbing, Inc.*, 48 F.3d 1465 (9th Cir.1994); *Trustees of National Automatic Sprinkler Indus. Pension Fund v. Zengel Brothers, Inc.*, 911 F.2d 725, 1990 WL 116843 (4th Cir.1990) (unpublished). The two doctrines are interrelated in that "one corporation is the alter ego of another where the factors necessary to support a 'single employer' finding are met and, ... the second corporation is a 'disguised continuance' of the employing enterprise...." *Trustees of Pension, Welfare and Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785, 788–89 (7th Cir.1993) (internal citations omitted).

Two entities will be considered a single employer by law if they have an interrelation of operations, common management, centralized control of labor relations, and common ownership. *See Radio & Television Broadcast Technicians Local*

*Union 1264 v. Broadcast Serv. of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965). No one of these factors is controlling. *See Vance v. National Labor Relations Board,* 71 F.3d 486 (4th Cir.1995). The Court must make an overall assessment of whether there is an arm's length relationship between the entities. *See id.; South Prairie Constr. Corp. v. Local No. 627, Int'l Union of Operating Eng'rs,* 425 U.S. 800, 802–03, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976). Under a similar standard, two entities are alter egos of one another if there is a disguised continuance of the old employer shown by common ownership, management, business purpose, operation, equipment, customers, and supervision. *See Massachusetts Carpenters,* 139 F.3d at 308; *Lihli Fashions Corp. v. NLRB,* 80 F.3d 743 (2nd Cir.1996). As will be discussed below, the Court concludes the facts supported by the record in the present case meet the elements of both doctrines.

### B.  Analysis

■ Budget Plumbing contends it "has no affiliation with Budget Fire Protection." *See Letter from Lang to Gilligan,* Exh. 16. Defendant contends the record shows the two companies operated independently. The Court, however, concludes the record supports a finding that Budget Plumbing is liable for the delinquent contributions.

Budget Plumbing maintains that Petersen alone controlled Budget Fire, and thus the two companies were not owned by the same shareholders. The record, however, paints a different picture. First, the record contains indicia of common ownership, management, and supervision. As previously set forth, Tom Muralt was a 40% owner and president of Budget Plumbing and a 90% owner of Budget Fire. Furthermore, the vice president of Budget Fire, Petersen, an employee of Budget Plumbing, owned 10% of Budget Fire. Until Spring 1995, Petersen served as employee of Budget Plumbing, and was engaged in general accounting and payroll services for both Budget Fire and Budget Plumbing simultaneously. *See Muralt Dep.* at 39–40, 59–60, 87–89, 92; *Petersen Dep.* at 40, 75, 121. Muralt provided business advice to Petersen. *See Muralt Dep.* at 59.

Other evidence of common ownership and management are obvious in the banking arrangement among the entities. A financing agreement existed between Budget Plumbing, Budget Fire, and Willmar State Bank. The agreement was a business management program designed to provide capital for financing to Budget Fire by taking a security interest in Budget Fire's accounts receivable. The financing agreement with the bank was secured with a personal guarantee from Muralt and Petersen and a corporate guarantee from Budget Plumbing Corporation. *See Muralt Dep.* at 45–47; *Petersen Dep.* at 47–49. When Budget Fire defaulted on the loan, the bank filed suit against Budget Plumbing and Muralt, which suit was settled by Muralt's payment of $3,000 to the bank. This financial relationship is evidence of a common ownership interest as well as evidence of a common business purpose. *See McAllister Bros.,* 819 F.2d at 445 n. 13 (acting as a loan guarantor "bears little resemblance to a typical business relationship between independent entities"); *Vance,* 71 F.3d at 492 (considering financial relationships as evidence of a single employer status). Budget Plumbing contends that the corporate guarantee was not approved or authorized by corporate resolution from Budget Plumbing, and that Budget Plumbing did not receive consideration for the guarantee. The record is clear, however, that Fred Muralt signed as a guarantor on behalf of Budget Plumbing Corporation and thereby assigned financial risk to the corporation. *See Muralt Dep.* at 46. In addition to the commonalities already discussed, the record contains other evidence of common management and supervision. In 1993, Budget Fire employed licensed sprinkler fitter, Richard Engebritson, to perform a contract. He later began bidding jobs on behalf of Bud-

get Fire. Engebritson also held management authority at Budget Plumbing. *See Muralt Dep.* at 56–58, 120. *Petersen Dep.* at 16–17. Furthermore, Engebritson's wages were reported to the Internal Revenue Service and the State of Minnesota on Budget Plumbing's quarterly tax reports under Budget Plumbing's employer identification numbers. *See Muralt Dep.* at 93; Plaintiff's Exh. 17. In fact, Budget Fire did not apply for its own tax identification numbers until Spring 1995. *See Muralt Dep.,* at 94. In short, Budget Fire served as simply a division of Budget Plumbing and the entities shared common ownership, management, and supervision.

Still another factor showing the singleness of the two entities is the common control of labor relations. For example, in October 1994, Petersen, while an employee and owner of Budget Plumbing, signed a collective bargaining agreement with Local 417 on behalf of Budget Fire. The Court notes that at the time of the signing, Budget Fire was not yet incorporated, and thus, Petersen was not yet an officer of Budget Fire. *See Collective Bargaining Agreement,* Exh. 9. Further evidence of the centralized system of labor relations is the fact that both companies were reported to the IRS and the State of Minnesota as employees of Budget Plumbing under its tax identification number. In response to Plaintiffs' presentation of the evidence, Budget Plumbing contends Muralt had no involvement in Budget Fire's labor relations. However, the very facts that it offers in support—that Petersen negotiated the collective bargaining agreement for Budget Fire, while still an employee at Budget Plumbing—instead support Plaintiffs' claims by showing the overlapping of business relationships between individuals involved in the companies' labor relations. Budget Plumbing attempts to minimize the impact of the tax identification number issue as a mere "accounting oversight." It states in its brief, "Simply being listed on the same tax identification number is hardly 'overwhelming evidence of a disguised continuance.'" See Defendant's Motion,

at 14. Defendant also refers to Petersen's provision of payroll services and Budget Plumbing during Budget Fire's incorporation as the "provision of some payroll services for Budget, but at a reduced schedule." Defendant only makes these broad conclusions, but does not support them with evidence in the record. Furthermore, the Court must look at the evidence as a whole in determining the issue of liability. *See Vance,* 71 F.3d at 493.

Finally, there is no genuine dispute that Budget Plumbing and Budget Fire shared common customers, equipment, and business purposes, and otherwise fostered interrelated operations. The companies operated out of connecting offices (with shared common areas) located in Eden Prairie, Minnesota. *See Muralt Dep.* at 24–25, 73–74; *Petersen Dep.* at 71–72. *See also Central States, Southeast & Southwest Areas Pension Fund v. Sloan,* 902 F.2d 593, 597 (7th Cir.1990) (joint ownership of office space highly relevant to the single employer inquiry). The building in which these offices were located was owned in equal shares by Muralt and Petersen. *See Muralt Dep.* at 20. The two companies also performed work for common customers at common work sites. In addition, the telephone systems in the two offices were structured such that each had access to the other's calls. *Muralt Dep.* at 79–82. Furthermore, Budget Plumbing provided necessary equipment and vehicles to Budget Fire. *See Muralt Dep.* at 32–33, 99–108, 79; *Petersen Dep.* at 85–89. The Court also notes that Budget Fire began as the sprinkler fitting department of Budget Plumbing, installing fire protection systems, and was subsequently incorporated for that purpose. However, following the incorporation, Budget Fire continued to rely on the expertise of Budget Plumbing employees—namely, Muralt and Engebritson. In this way, the incorporation of Budget Fire was a continuation of Budget Plumbing's operation and business purposes. Budget Fire served as a corporate shell, and the record indicates the nature

of the relationship mirrored that of a single entity. *See McAllister,* 819 F.2d at 445 n. 13 ("The companies' reliance on the legal formalities of separate incorporation and distinct equity ownership cannot conceal their inextricable relationship.").

In response to the evidence presented by Plaintiffs, Defendant Budget Plumbing throughout its motion seeks to rebut the evidence by what amounts to mere disagreement with and trivialization of the record. Plaintiff focuses on one narrow commonality in the abstract, and not in the total scheme of the relationship. Upon the record before it, the Court cannot conclude as Defendant suggests that the "undisputed facts show, conclusively, that Budget Fire and Budget Plumbing operated as independent companies." Rather, the undisputed facts show the opposite. The factual circumstances surrounding the relationship at issue establish that the parties were not operating at arm's length. Budget Fire operated as a continuation of Budget Plumbing. The Court finds, like the Fourth Circuit in *Vance* that "substantial evidence in the record supports the . . . conclusion that [Budget Plumbing and Budget Fire] were interrelated in their operations. The evidence demonstrates that the companies interacted regularly in their normal business dealings . . . . [Furthermore], the record shows that a significant financial interrelationship existed between the companies . . . . [Thus] the record as a whole supports the [Court's] finding that [the companies] are a single employer." *Vance,* 71 F.3d at 493.

In sum, Budget Plumbing and Budget Fire were a single employer and alter egos of one another. Accordingly, the Court will grant Plaintiffs' motion for summary judgment and Defendant's cross-motion for summary judgment. Consequently, Budget Plumbing is liable for the delinquent contributions due and owing to Plaintiffs for the hours worked by the employees of Budget Plumbing and Budget Fire during the relevant time period.

## C. Damages

■ Upon a reading of Defendant Budget Plumbing's submission, the Court recognizes that Defendant chose not to contest the amount of damages requested by Plaintiffs. In fact, Defendant states that it limits its discussion to the threshhold issue of its responsibility for the delinquent payments, and "does not intend to pursue a Pyrrhic victory to the bitter end by expending legal fees far in excess of the present demand." Defendant's Summary Judgment Motion, at 2. Accordingly, the Court will award Plaintiffs damages consistent with prevailing law, the accounting records and other evidence offered in support of the damages request, and the agreements between the parties. Plaintiffs are entitled to damages for delinquent funds under ERISA, §§ 502(g)(2) [1] and 515. While Plaintiffs cite the ERISA provisions allowing attorneys' fees, Plaintiff failed to present proof of attorneys' fees in accordance with the Local Rules of this Court, and the well-established case law concerning the submission of an adequate accounting of attorneys' fees to the Court. In fact, Plaintiffs failed to provide any records to support its attorneys' fees motion. Thus, Plaintiffs' request for attorneys' fees is denied. Based upon the account records showing the delinquent fund amounts, however, the Court will enter judgment for the Plaintiffs in the amount of $20,098.72 in delinquent funds owed, plus liquidated damages (20% rate) in the amount of $4,019.75, and interest at the rate of 12% to be calculated from the date the delinquency became due to the date of the judgment. This case will be closed.

1. This section provides for the following damages: (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan [here, 20%], and (D) reasonable attorneys' fees and costs to be paid by defendant. 29 U.S.C. § 1132(g)(2).

An Order consistent with this Opinion will follow.