**In re STAR FIRE PROTECTION, INC., Debtor.**

**No. 3:09–bk–1664–PMG.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 23, 2010.

Albert H. Mickler, Bryan K. Mickler, Jacksonville, FL, for Debtor.

## ORDER ON STAR FIRE'S SECOND AMENDED OBJECTION TO CLAIM 13 OF NASI FUNDS

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Second Amended Objection to Claim 13 of NASI Funds filed by the Debtor, Star Fire Protection, Inc.

The Trustees of the National Automatic Sprinkler Industry Welfare Fund, National Automatic Sprinkler Local 669 UA Education Fund, National Automatic Sprinkler Industry Pension Fund, and Sprinkler Industry Supplemental Contribution Pension Fund (collectively, NASI) filed Amended Proof of Claim Number 13 in this Chapter 11 case in the amount of $248,246.84.

Amended Claim 13 is based on "unpaid fringe benefit contributions required by Assent and Interim Agreements and Collective Bargaining Agreements with Road Sprinkler Fitters Local 669, Sprinkler Fitters Local 821, 29 U.S.C. § 1145 and, if applicable, state wage payment law."

The Debtor objects to NASI's Claim on the grounds that (1) no collective bargaining agreements exist between the Debtor and the Local Unions that may be enforced by NASI, and (2) NASI cannot enforce a liquidated damages clause that is in the nature of a penalty. (Doc. 114).

### I. Background

The National Automatic Sprinkler Industry Welfare Fund, Education Fund, Pension Fund, and Supplemental Contribution Pension Fund are union-established multi-employer benefit plans that provide medical, retirement, and educational benefits to employees working in the fire protection industry. The Funds were created under the Employee Retirement Income Security Act (ERISA). Generally, the benefits provided by the plans are financed by employer contributions pursuant to collective bargaining agreements between employers in the fire protection industry and various Local Unions representing industry employees. *Trustees of the National Automatic Sprinkler Industry Pension Fund v. Fairfield County Sprinkler Company, Inc.*, 243 F.3d 112, 114 (2d Cir. 2001); *Trustees of the National Automatic Sprinkler Industry Pension Fund v. Budget Plumbing Corporation, Inc.*, 111 F.Supp.2d 716, 717 (D.Md.2000).

The Local 669 and the Local 821 Collective Bargaining Agreements that are currently in effect provide that employers are obligated to make certain contributions to the Funds for every hour worked by an employee performing the work of a sprinkler fitter. The amounts of the contributions are calculated in accordance with reports furnished by the employers containing the number of hours worked by their employees on a monthly basis. The employers' contributions are then due by the 15th day of the month following the month in which the work was performed. (NASI Exhibit 18, Articles 19–23; NASI Exhibit 19, Articles XVI–XVIII; NASI Exhibits 12, 13, 14, 15, Restated Trust Agreements, Article VI; NASI Exhibit 20, Guidelines for Participation in the Sprinkler Industry Trust Funds, Section 4).

The Debtor in this case is engaged in the business of installing and maintaining commercial and residential fire protection systems. (Doc. 84, p. 1).

On March 10, 2009, the Debtor filed its petition under Chapter 11 of the Bankruptcy Code.

NASI subsequently filed Amended Claim 13 in the Chapter 11 case. The claim is filed in the total amount of $248,246.84, and is for "unpaid fringe benefit contributions required by Assent and Interim Agreements and Collective Bar-

gaining Agreements with Road Sprinkler Fitters Local 669, Sprinkler Fitters Local 821, 29 U.S.C. § 1145 and, if applicable, state wage payment law." Specifically, the claim consists of unpaid contributions for the Welfare Fund, the Education Fund, the Pension Fund, and the SIS Fund in the amount of $120,915.88, and liquidated damages for late payments between December of 2005 and June of 2009 in the amount of $127,330.96.

The Debtor objects to NASI's claim on two primary grounds. First, the Debtor asserts that it is not obligated to make the contributions to the Funds, because it is not a party to any Collective Bargaining Agreement with either Local Union 669 or Local Union 821. Second, the Debtor asserts that NASI's claim for liquidated damages is unenforceable as a penalty. (Doc. 114).

## II. The Collective Bargaining Agreements

The Debtor contends that NASI's claim should be disallowed because "there does not exist any collective bargaining agreements or stipulations between Star Fire and the Unions." (Doc. 134). Essentially, the Debtor asserts that it is not a member of the National Fire Sprinkler Association (NFSA), the association that represents employers in connection with its collective bargaining agreements with the Unions. (Transcript, p. 27). Since the Debtor is not a member of the NFSA and is not otherwise a party to the collective bargaining agreements, the Debtor contends that it is not bound by their terms. (Doc. 134, pp. 3–10).

The Debtor's contention in this regard should be rejected. The Court finds that the Debtor agreed to be bound by the terms of the current Collective Bargaining Agreements with Local Union 669 and Local Union 821, including the provisions re-

garding contributions to the employee benefit funds.

### A. Local Union 669

On January 14, 2005, the Debtor signed a two-page Agreement to be bound by a prior Collective Bargaining Agreement between the NFSA and Local Union 669 dated April 1, 2000, and all addenda and supplements to the Agreement. (NASI Exhibit 7).

On April 1, 2005, approximately two and one-half months after the Debtor signed the two-page Agreement, the NFSA and Local Union 669 entered into a Collective Bargaining Agreement covering the rules, regulations, and working conditions of employees who install, repair, and maintain fire protection and fire control systems. (NASI Exhibit 6).

Starlene Tittle, as president of the Debtor, testified that the Debtor agreed by virtue of the two-page Agreement signed in January to be bound by the subsequent Local 669 Collective Bargaining Agreement dated April 1, 2005. (Transcript, pp. 52, 54).

According to the 2005 Local 669 Collective Bargaining Agreement, its terms were effective from April 1, 2005, to March 31, 2007. (NASI Exhibit 6, p. 37). Article 30 of the 2005 Collective Bargaining Agreement provides:

**PROVISIONS FOR RENEWAL OF AGREEMENT:** Sixty (60) days prior to April 1, 2007, written notice may be given by either party requesting a conference to prepare such alterations or amendments as may be agreed to. *Failing to give such written notice, this Agreement remains in force from year to year, until written notice of sixty (60) days prior to April 1 is served.* Written notice shall be sent by registered mail to the National Fire Sprinkler Association,

Inc., and to the Local Union at its National Office.

(NASI Exhibit 6, p. 38)(Emphasis supplied). The Debtor did not give notice to Local 669 that it intended to amend or alter the 2005 Local 669 Collective Bargaining Agreement in accordance with Article 30. (Transcript, p. 55).

In March of 2007, shortly prior to the expiration of the 2005 Local 669 Collective Bargaining Agreement, the Debtor, as the employer, and Road Sprinkler Fitters Local Union No. 669, U.A., AFL–CIO, as the Union, entered into an Assent and Interim Agreement. (NASI Exhibit 8). Pursuant to the Agreement, the Debtor agreed that a Collective Bargaining Agreement was in full force and effect. (Paragraph 2). Additionally, paragraph 3 of the Assent and Interim Agreement provides:

> 3. It is further agreed that in the event the Union and NFSA consummate a new National Construction Agreement either prior or subsequent to April 1, 2007, *the Employer and the Union mutually agree to be bound by the terms and conditions of said new Agreement between the Union and NFSA* and all amendments, addendums and supplements thereto, including, among other things, reopener provisions, if any, *the same as if the Employer and the Union were parties thereto; and the Employer and the Union herewith adopt said Agreement as and for their contract of employment* and agree that all the journeymen sprinkler fitters, apprentices and unindentured apprentice applicants hired by the Employer are to be employed according to the terms and conditions of employment contained in said new Agreement and to pay retroactively any wage increases or fringe benefit contribution increases of said Agreement to April 1, 2007.

(NASI Exhibit 8, Paragraph 3)(Emphasis supplied). The Debtor further agreed to be bound by the Declarations of Trust establishing a Local Union 669 Health and Welfare Fund, Education Fund, and Pension Fund (Paragraph 4), and to make the necessary financial contributions to the Funds described in the Declarations, as well as to any other benefit funds established by the National Agreement. (Paragraph 5).

On April 14, 2007, approximately one month after the Debtor signed the Assent and Interim Agreement, the NFSA and the Road Sprinkler Fitters Local Union No. 669 entered into a Collective Bargaining Agreement. (NASI Exhibit 18). According to Article 29 of the Agreement, it is effective from April 1, 2007, to March 31, 2010. (NASI Exhibit 18, p. 41). The terms regarding the Welfare Fund, including the amounts that employers are required to contribute per hour of work, are set forth in Article 19 of the Agreement. Corresponding terms for the Pension Fund, Education Fund, and Supplemental Pension Fund are set forth in Articles 20, 21, and 22, respectively, of the Agreement.

Following the entry of the Collective Bargaining Agreement in April of 2007, the Debtor submitted at least fifteen Contribution Reports to NASI. Specifically, the Debtor submitted Contribution reports to NASI for each of the six months beginning in July of 2007 and ending in December of 2007, and for each of the nine months beginning in January of 2008 and ending in September of 2008. (NASI Exhibits 9, 10; Transcript, pp. 59–61). The Reports are entitled "Report of Contractor Contributions to the National Automatic Sprinkler Industry Fringe Benefit Funds," and refer to Local 669 as the "territory/class." Each Report includes the following statement:

The above named contractor affirms, declares and certifies that: (1) It is a party to a written agreement requiring contributions to those Sprinkler Industry Trust Funds for which contributions are being submitted on this Report; (2) It agrees to be bound by the Sprinkler Industry Trust Funds' Agreements and Declarations of Trust, Plan documents and Guidelines for Participation; and (3) the contributions submitted with this Report accurately reflect all contributions due to the Sprinkler Industry Trust Funds as set forth in the contractor's written agreement and the Funds' Guidelines for Participation.

(NASI Exhibits 9, 10; Transcript, p. 59). Additionally, it is noteworthy that the Contribution Reports for January of 2008 and each month thereafter reflect a contribution rate of $7.55 per hour, in accordance with the increased rate set forth in the Collective Bargaining Agreement dated April of 2007. (NASI Exhibits 10, 18; Transcript, pp. 63–64).

## B. Local Union 821

On June 2, 2005, the NFSA and Local Union 821 entered into a Collective Bargaining Agreement covering the rules, regulations, and working conditions of employees who install fire protection and fire control systems. (NASI Exhibit 1).

Starlene Tittle, as president of the Debtor, testified that the Debtor "signed with" Local Union 821 in 2005. (Transcript, p. 37). Specifically, Ms. Tittle testified that she signed the 2005 Local 821 Collective Bargaining Agreement on behalf of the Debtor. (Transcript, pp. 39, 41; NASI Exhibit 2, signature page dated January 14, 2005).

According to the 2005 Local 821 Collective Bargaining Agreement, its terms were effective from July 1, 2005, to June 30, 2008. (NASI Exhibit 1, p. 20). Article XXIV of the 2005 Collective Bargaining Agreement provides:

**PROVISIONS OF RENEWAL OF AGREEMENT:** Sixty (60) days prior to June 30, 2008, written notice may be given by either party requesting a conference to prepare for such alterations or amendments to this Agreement as may be necessary; *failing to give such written notice, this Agreement remains in force from year to year until written notice of Sixty (60) days prior to June 30th is served.*

Written notice shall be sent by registered letter to the National Fire Sprinkler Association at P.O. Box 1000, Patterson, New York 12563.

(NASI Exhibit 1, p. 20)(Emphasis supplied). Although the Debtor wrote a letter in April of 2008 to advise Local 821 that it was retaining its bargaining rights, the letter was not mailed to the entity at the address required by Article XXIV of the 2005 Collective Bargaining Agreement. (Debtor's Exhibit 8) Ms. Tittle testified that the Debtor did not serve a notice to alter or amend the 2005 Collective Bargaining Agreement to the NFSA in accordance with Article XXIV. (Transcript, p. 41).

On June 27, 2008, the Debtor, as the employer, and the Sprinkler Fitters and Apprentices U.A. Local Union 821 of Florida, as the Union, entered into an Interim Agreement. (NASI Exhibit 4). Pursuant to the Interim Agreement, the Debtor agreed that it was bound to a Collective Bargaining Agreement that was scheduled to expire on June 30, 2008, and acknowledged that the NFSA and the Union were in the process of negotiating a new Agreement. The Interim Agreement further provided:

1. The Employer [the Debtor] agrees to abide by and keep in effect all terms and conditions including, but not

limited to wage rates and fringe benefits of the current agreement.

2. The Employer [the Debtor] *agrees to execute any collective bargaining agreement negotiated between the Union and this Association.*

3. *That the terms and conditions of any collective bargaining agreement entered into between the Union and the Employer shall be payable on July 1, 2008.*

(NASI Exhibit 4)(Emphasis supplied).

On August 29, 2008, approximately two months after the Debtor signed the Interim Agreement, the NFSA and Sprinkler Fitters and Apprentices Local Union No. 821 entered a Collective Bargaining Agreement. (NASI Exhibit 19). According to its terms, the new Collective Bargaining Agreement is effective from July 1, 2008, through June 30, 2011. (NASI Exhibit 19, p. 25). The terms of the Welfare Fund, Pension Fund, Supplemental Pension Fund, and Industry Fund, including the amounts that employers are required to contribute per hour of work, are set forth in Articles XVI, XVII, XVIII, and XXI, respectively, of the Collective Bargaining Agreement.

Following the effective date of the Collective Bargaining Agreement, the Debtor submitted at least four Contribution Reports to NASI. Specifically, the Debtor submitted Contribution Reports to NASI for July, August, September, and October of 2008. (NASI Exhibit 5; Transcript, pp. 51–52). Each Report is entitled "Report of Contractor Contributions to the National Automatic Sprinkler Industry Fringe Benefit Funds," and refers to Local 821 as the "territory/class." Further, each of the Reports contains the following statement:

The above named contractor affirms, declares and certifies that: (1) It is a party to a written agreement requiring contributions to those Sprinkler Industry Trust Funds for which contributions are being submitted on this Report; (2) It agrees to be bound by the Sprinkler Industry Trust Funds' Agreements and Declarations of Trust, Plan documents and Guidelines for Participation; and (3) the contributions submitted with this Report accurately reflect all contributions due to the Sprinkler Industry Trust Funds as set forth in the contractor's written agreement and the Funds' Guidelines for Participation.

(NASI Exhibit 5). Additionally, it is noteworthy that the rate reflected in each of the Reports is $7.15 per hour, in accordance with the increased rate set forth in the 2008 Collective Bargaining Agreement. (NASI Exhibits 5, 19).

## C. Agreements to be bound

The Debtor contends that it is not a party to the Collective Bargaining Agreements that require employers to make contributions to the NASI Funds. A primary issue in this case, therefore, is whether the Assent and Interim Agreement entered with Local 669 and the Interim Agreement entered with Local 821 are effective to bind the Debtor to the current Collective Bargaining Agreements. The Court finds that the Interim Agreements, combined with the Debtor's conduct in submitting Contribution Reports after the Collective Bargaining Agreements were negotiated, are sufficient to bind the Debtor to their terms.

The execution of Assent and Interim Agreements similar to the Agreements entered by the Debtor is a standard practice during the periods when unions are negotiating new collective bargaining agreements with employers. *Grinnell Corporation v. Road Sprinkler Fitters Local Union No. 669*, 1997 WL 311498, at *2 n. 4 (D.Md.1997). "A contractor [employer] signing such a document would agree

to be bound by the terms of the new collective bargaining agreement later negotiated by the Union and the NFSA, and in return the Union would agree to continue to work for that particular employer if the current agreement expired and there was a strike against the other employers represented by the NFSA." *Grinnell Corporation v. Road Sprinkler Fitters Local Union No. 669,* 1997 WL 311498, at *2. In fact, paragraph 1 of the Assent and Interim Agreement entered by the Debtor and Local 669 in this case constitutes such a provision specifying the mutual consideration of the parties.

1. The Union agrees that, in return for the mutual promises and covenants contained herein, it will not strike, picket, or engage in other concerted activity against the Employer [the Debtor] for the purpose of negotiating the terms and conditions of a Collective Bargaining Agreement to succeed the Agreement between the Union and the Employer to expire on March 31, 2007.

(NASI Exhibit 8). The "mutual promises and covenants," of course, include the agreement of the Debtor and the Union to be bound by the terms and conditions of any new Collective Bargaining Agreement entered by the Union and NFSA for the period after March 31, 2007. (NASI Exhibit 8).

Further, the binding nature of such Assent and Interim Agreements has been generally recognized in disputes concerning the enforceability of the agreements. As in the case presently before the Court, for example, NASI was seeking to recover delinquent benefit fund contributions from an employer in *Trustees of the National Automatic Sprinkler Industry Pension Fund v. Budget Plumbing Corporation, Inc.,* 111 F.Supp.2d 716, 717 (D.Md.2000). In that case, the Court stated without discussion:

Budget Plumbing agreed to be bound to the contribution requirements when it signed an "Assent and Interim Agreement" with the Road Sprinkler Fitters Local Union No. 669 by which it agreed to be bound by the collective bargaining agreement ("CBA").... The interim agreement also provided that if Local 669 and the National Fire Sprinkler Association negotiated a new agreement, Budget Plumbing would be bound by it. In April 1994, a new CBA was negotiated.

*Trustees of the National Automatic Sprinkler Industry Pension Fund v. Budget Plumbing Corporation, Inc.,* 111 F.Supp.2d at 718. Consequently, according to the Court, Budget Plumbing was obligated to make contributions to the NASI Funds under the agreements. *Id.* at 718.

In another case involving Local 669, an employer had signed a series of Assent and Interim Agreements with Local 669 over a period of six years, and the Court stated that the employer "became party" and was bound to subsequent Collective Bargaining Agreements between the NFSA and the Union by virtue of the interim agreements. *MFP Fire Protection, Inc. v. NLRB,* 101 F.3d 1341, 1342–1343 (10th Cir.1996). During the six-year period when the agreements were in effect, the employer made payments to the Union's health, welfare, and pension funds. In *MFP Fire Protection,* the Court found that the series of agreements, together with the history of payments to the funds, barred the employer from later denying the Union's status as the employees' representative. *MFP Fire Protection, Inc. v. NLRB,* 101 F.3d at 1344.

Finally, in *Mo–Kan Teamsters Pension Fund v. Creason,* 716 F.2d 772, 773 (10th Cir.1983), a union brought an action against an employer to recover delinquent

fringe benefit contributions. Although the case involves a union other than Local 669 or Local 821, it deals with a stipulation pursuant to which the employer agreed with the union to be bound by a collective bargaining agreement, subsequent collective bargaining agreements, and any renewals, modifications, or extensions of the agreements. *Mo–Kan Teamsters Pension Fund v. Creason,* 716 F.2d at 774. The employer later asserted that its obligations to the union had terminated upon the expiration of the collective bargaining agreement in effect at the time of the stipulation. *Id.* at 776. The Court rejected the employer's contention, and determined that the employer's obligations to the union continued under the new collective bargaining agreement. *Id.* Additionally, in affirming the district court's award of delinquent fringe benefit contributions, the Court also noted that the employer had continued to make payments to the benefit funds, "thus ratifying the new agreement." *Id.*

■ In this case, the Debtor entered into an Assent and Interim Agreement with Local 669 in March of 2007, pursuant to which it expressly agreed to be bound by the terms of the Collective Bargaining Agreement entered in April of 2007, "the same as if" it was a party to the Agreement, and expressly adopted the Collective Bargaining Agreement as its contract governing the employment of sprinkler fitters. (NASI Exhibit 8). Further, the Debtor subsequently engaged in conduct evidencing its understanding that the Collective Bargaining Agreement governed its employment of sprinkler fitters by submitting Contribution Reports to NASI in accordance with the Agreement's terms. Under these circumstances, the Debtor cannot contend that it is not bound by the terms of the current Local 669 Collective Bargaining Agreement.

■ Similarly, the Debtor entered into an Interim Agreement with Local 821 in June of 2008, pursuant to which it expressly agreed to execute a new Collective Bargaining Agreement effective as of July 1, 2008, and further agreed that the conditions of the new agreement would be "payable" on July 1, 2008. Further, as with Local 669, the Debtor subsequently engaged in conduct evidencing its understanding that the new Collective Bargaining Agreement governed its employment of sprinkler fitters by submitting Contribution Reports to NASI in accordance with the Agreement's terms. Consequently, the Debtor cannot contend that it is not bound by the terms of the current Local 821 Collective Bargaining Agreement.

## D. Applicability in Florida

■ As a separate issue regarding the enforceability of the Collective Bargaining Agreements, the Debtor asserts that it was not obligated to make the Fund contributions claimed by NASI because the Collective Bargaining Agreements do not apply in the state of Florida. (Doc. 134, p. 5; Transcript, pp. 17–18, 86–88). The Debtor's contention in this regard should be rejected.

Article IV of the 2008 Local 821 Collective Bargaining Agreement provides as follows:

### ARTICLE IV

*TERRITORY:* The territory embraced in this Agreement shall be the State of Florida. . . .

(NASI Exhibit 19, p. 2). Clearly, the terms of the current Local 821 Collective Bargaining Agreement apply in Florida.

■ Article 6 of the 2007 Local 669 Collective Bargaining Agreement provides as follows:

## ARTICLE 6

This Agreement applies to the United States, and Off–Shore Drilling operations, *except* in the territory established as of April 1, 2007, covered by the local agreements in . . . *the states of Florida–821* and Connecticut–676. *It is agreed that the contractor members who are subscribers to this Agreement shall, when performing work within the jurisdiction of any other Sprinkler Fitters Local Union, adhere to and be bound by the terms and conditions of the Collective Bargaining Agreement negotiated by the National Fire Sprinkler Association, Inc. with these other Sprinkler Fitters Local Unions.*

(NASI Exhibit 18, p. 7)(Emphasis supplied). Based on the operation of Article IV of the Local 821 Agreement and Article 6 of the Local 669 Agreement, therefore, the employment by the Debtor of a sprinkler fitter in Florida will be governed by the Local 821 Collective Bargaining Agreement.

This conclusion is supported by an evaluation of the Collective Bargaining Agreements and relevant case authority. The Court has found that the Debtor agreed to the terms of the Local 821 Agreement by virtue of the Interim Agreement dated June 27, 2008, and the Debtor's subsequent conduct. Additionally, the Court finds that the Local 821 Agreement controls the Debtor's employment of sprinkler fitters in Florida because of the operation of Article 6 of the Local 669 Agreement.

It appears well-established that the Local 669 Agreement covers a broad national territory, and that the Local 821 Agreement, like other Local Union agreements, covers a smaller geographical area such as a state or metropolitan area. See *Calatrello v. "Automatic" Sprinkler Corporation of America,* 55 F.3d 208, 210 (6th Cir.1995). In this case, the smaller geo-

graphical area covered by the Local 821 Agreement is Florida.

Provisions such as Article 6 of the Local 669 Agreement are generally known as "traveling clauses," and are common in the construction industry. *Trustees of the National Automatic Sprinkler Industry Pension Fund v. Fairfield County Sprinkler Company,* 243 F.3d 112, 116 (2d Cir.2001); *International Union of Bricklayers and Allied Craftworkers, Local 5 v. Banta Tile & Marble Co., Inc.,* 2009 WL 2917707, at *2 (3d Cir.2009).

■ It is generally held that a traveling clause contained in a particular union's collective bargaining agreement is intended to provide rights to unions that are not parties to the agreement containing the clause. *International Union of Bricklayers and Allied Craftworkers, Local 5 v. Inter–State Tile & Mantel Co., Inc.,* 2008 WL 3245464, at *5 (M.D.Pa.2008). Consequently, a traveling clause may bind an employer to a collective bargaining agreement in force at the location of its project, regardless whether the employer is a party to a collective bargaining agreement in that location. *International Union of Bricklayers and Allied Craftworkers, Local 5 v. Banta Tile & Marble Co., Inc.,* 2009 WL 2917707, at *2 (citing *Flynn v. Dick Corp.,* 481 F.3d 824, 830–31 (D.C.Cir. 2007)).

See also *Flynn v. Tiede–Zoeller, Inc.,* 412 F.Supp.2d 46, 59 (D.D.C.2006)(the collective bargaining agreements that were in force at the employer's jobsites were "incorporated by reference" in the Agreement containing the traveling clause), and *Flynn v. Beeler Barney Associates Masonry Contractors, Inc.,* 2004 WL 3712630, at *6–7(a traveling clause can mean only that an employer having work in an area covered by another collective bargaining agreement must abide by the terms of that

894

other agreement, regardless whether it has signed an agreement in that location).

In this case, therefore, the current Local 669 Collective Bargaining Agreement applies in the United States, except in those jurisdictions where specific Local Agreements govern the employment of sprinkler fitters. If work is performed in such a jurisdiction, the Local 669 Agreement provides that the Collective Bargaining Agreement in effect in that territory applies to the employment. Consequently, if the Debtor in this case employs a sprinkler fitter who performs work in Florida, Article 6 of the Local 669 Agreement provides that the employment will be governed by the Local 821 Collective Bargaining Agreement. (See Transcript, pp. 92–94; Doc 135, p. 5).

Given the territorial interaction of the Local 669 Collective Bargaining Agreement and the Local 821 Collective Bargaining Agreement, the Debtor cannot contend that its compliance with the Agreements is excused because the Agreements do not apply in the state of Florida.

### III. The liquidated damages clause

■ Finally, in its Amended Objection to Claim No. 13, the Debtor asserts that NASI's Claim includes a component based on liquidated damages, and that the claim should not be allowed "if the contractual liquidated damages are in the nature of a penalty." (Doc. 77).

The Court finds that the liquidated damages provision in this case is not unenforceable as a penalty.

The Restated Trust Agreements pertaining to the NASI Funds provide:

Regular, prompt and correct payment of amounts due by individual Employers to this Fund is essential for the maintenance of the Fund. It is extremely difficult, if not impossible, to establish the actual expense and damage to the Fund and to the Pension program provided by the Fund which will result from failure of an individual Employer to make payments in full within the specified time period established by the Trustees. Therefore, payments and the completed reporting forms are due by the fifteenth (15th) day following the end of each calendar month. If an Employer does not pay the amounts due to the Fund by the due date, that Employer is delinquent and the following, in the discretion of the Trustees, will be added to and become part of the amount due from the Employer: (1) liquidated damages in the amount of ten percent (10%) of the amount due for the month if payment is not received by the due date; an additional five percent (5%) liquidated damages if payment is not received by the first (1st) of the month following the calendar month in which payment was due and an additional five percent (5%) liquidated damages if payment is not received by the fifteenth (15th) day of the month following the calendar month in which payment is due plus interest from the due date to the date of payment at the rate determined by the Trustees which may not exceed the rate provided under Section 6621 of the Internal Revenue Code; or (2) double interest as provided in ERISA.

(NASI Exhibit 12, pp. 22–23; Exhibit 13, p. 24; Exhibit 14, pp. 21–22; Exhibit 15, pp. 21–22). According to John P. Eger, the Assistant Administrator for the Funds, the damage to the Funds caused by delinquent contributions includes "increased collection activities and costs, additional delinquency statements and correspondence, diversion of employee time, uncertainty of collection, the uncertainty of the effect the delinquency will have on the NASI Benefit Funds' ability to pay out benefits in the future, and lost investment

earnings." (Doc. 87, Declaration of John P. Eger, Paragraph 21).

 The liquidated damages provided by the Restated Trust Agreements do not constitute unenforceable penalties. Such damages may be recovered pursuant to collective bargaining agreements. *Board of Trustees of the Ohio Laborers' Fringe Benefit Programs v. Bihn Excavating, Inc.*, 2005 WL 1421953, at *3 (S.D.Ohio 2005). Where the harm caused by a breach is difficult or impossible to estimate, and where the amount fixed is a reasonable forecast of fair compensation for the harm caused, the liquidated damages amount is recoverable under a collective bargaining agreement. *Plumbers Local 98 Defined Benefit Pension Fund v. Premier Plumbing and Mechanical, LLC,* 2006 WL 2623370, at *4 (E.D.Mich.2006).

In this case, the amounts provided in the Restated Trust Agreements satisfy the standard for recoverable damages, and should be allowed.

### Conclusion

NASI filed Amended Claim Number 13 in the amount of $248,246.84. The claim was based on "unpaid fringe benefit contributions" in the amount of $120,915.88, and liquidated damages for late payments in the amount of $127,330.96.

The Court finds that the Debtor had agreed to be bound by the Local 669 Collective Bargaining Agreement and the Local 821 Collective Bargaining Agreement, and that the Collective Bargaining Agreements govern the Debtor's obligations to the NASI Funds. Further, the liquidated damages component of the Claim is not unenforceable as a penalty.

The Debtor's Objection to NASI's Claim 13 should be overruled.

Accordingly:

**IT IS ORDERED** that:

1. The Second Amended Objection of the Debtor, Star Fire Protection, Inc., to Claim 13 of NASI Funds is overruled.

2. Amended Claim Number 13 filed by the Trustees of the National Automatic Sprinkler Industry Welfare Fund, National Automatic Sprinkler Local 669 UA Education Fund, National Automatic Sprinkler Industry Pension Fund, and Sprinkler Industry Supplemental Contribution Pension Fund is allowed as filed in the total amount of $248,246.84.